JOHN G. BROOKS, and others, Exors. in Equity,

*vs.*

CITY OF BELFAST, and others.

Waldo. Opinion May 29, 1897.

90 318
92 290

90 318
97 438

90 318
d104 326
104 327

*Will. Perpetuities. Trust. Public Charity. School District. Doctrine of Cy Pres. Stat. 1893, c. 216.*

The residuary clause of the will of Mary E. Simpson Southworth requiring a judicial construction is as follows : " All the rest, residue and remainder of my estate and of which I may die possessed, I give, bequeath and devise to the Central School District of said Belfast, for the purpose following : 1st, The amount of this bequest shall be invested or put at interest so that an income may accrue and so kept until a sufficient sum shall be accumulated by increase from interest or profit, by subsequent bequests or gifts, or in some other way, to provide for the erection of a schoolhouse within said district suitable to accommodate at least four of the schools. 2nd, When the sum becomes sufficient for the above purpose, the money shall be used for the building such a schoolhouse as is indicated above."

The testatrix executed this will December 17, 1889, and died July 21, 1895. At the date of the will there were sixteen school districts in the city of Belfast, including the one named in the will, and which comprised the city proper. Each of these districts was then a body corporate capable to take and hold property by bequest or devise ; but before the death of the testatrix the school districts in all towns in the State were abolished by the statute of 1893, c. 216, and on March 1, 1894, Central School District ceased to have a corporate existence for the purpose of taking property by bequest or devise.

*Held ;* That the Central School District having ceased to exist, there is neither trustee nor beneficiary capable of taking the fund ; and by the abolition of the district the residuary bequest to that corporation lapsed to the estate of the testatrix and descended to her heirs as intestate property.

*Also ;* that this bequest was not an unqualified and unrestricted gift of a fund to be used for any and all purposes to which the district might appropriate

it. It was limited to the specific purpose of erecting a schoolhouse within said district, suitable to accommodate at least four of the schools. The school district was at once the trustee and the beneficiary.

*Also ;* that the Central District having ceased to exist, there is neither trustee nor beneficiary capable of taking the fund; and if the tax payers and scholars within the limits of that district should be deemed the true beneficiaries, and it were practicable or possible by substitution of other trustees to secure and restrict the benefit of the fund to the tax payers of that district alone, such beneficiaries would not be a body corporate capable of receiving and holding the fund, but the title would be held and continued in the hands of the trustees; and the objection arising from the rule against perpetuities thus be obviated.

*Also ;* that the case is not one in which the intention of the testatrix may be effectuated by an application of the doctrine of cy pres and the gift applied " as nearly as possible " in conformity with the presumed intention of the donor, although the particular form or manner specified in the bequest cannot be followed.

ON REPORT.

This was a bill in equity brought by the executors of the will of Mary E. S. Southworth, late of Belfast, deceased, for the purpose of obtaining the construction of the residuary clause of her will, and which will be found in the opinion of the court. The case was heard upon bill, answer and the additional fact that, at the date of the will, there were sixteen school districts in the city of Belfast inclusive of the Central District, so-called, and named in the will as one of the objects of the testatrix's bounty.

*W. P. Thompson,* for plaintiffs.

*N. Wardwell,* City Solicitor, for Belfast.

Will creates a good charitable bequest: Perry on Trusts, § 700. Stat. 43 Eliz. c. 4 in force in this State. *Tappan* v. *Deblois,* 45 Maine, 122 ; *Howard* v. *Amer. Peace Society,* 49 Maine, 288 ; *Swasey* v. *Amer. Bible Society,* 57 Maine, 526.

If the founder describes the general nature of a charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery; and an omission to name the trustees, or the death or declination of the trustees named, will not defeat the trust, but the court will appoint new trustees in their stead. *Russell* v. *Allen,* 107 U. S. 182; *Fuller* v. *Griffin,* 3 U. S. 400.

While the Central School District in its corporate capacity is by said act abolished, yet the school itself, the object for which the legacy was intended, still exists. The act itself distinctly says that its passage shall not abolish or change the location of any school legally abolished.

The words Central School District, as used by the testatrix, are words descriptive only of the place where her bounty is to be bestowed.

Rule of cy pres is applicable: Bishop Eq. 130; *Howard* v. *Amer. Peace Society*, 49 Maine, 302; *Dascomb* v. *Marston*, 80 Maine, 223; *Atty Genl.* v. *Briggs*, 164 Mass. 561.

*R. F. Dunton*, for heirs of Mrs. Southworth.

Counsel argued: (1) That said bequest is to Central School District absolutely, and lapsed by the abolition of said district before the death of said testatrix. (2) If not an absolute gift to Central School District, it violates the rule against perpetuities, and, for that reason, is void. (3) That this is not a proper case for the application of the doctrine of cy pres.

Bequest offends the rule against perpetuities: Gray on Perpet. §§ 201, 214, 591, 600, 605, 606, 671, 674; 18 Am. & Eng. Ency. p. 362, 365, 369, 382, 388; *Chamberlayne* v. *Brockett*, L. R. 8 Ch. 206, 211; *Merritt* v. *Bucknam*, 77 Maine, 259; *Jocelyn* v. *Nott*, 44 Conn. 59; Jarman on Wills, 6th Ed. p. 262, note; *Hillyard* v. *Miller*, 10 Pa. St. 326.

Doctrine of cy pres not applicable: Jarman on Wills, 6th Ed. pp. 209, 210, and cases cited; Perry on Trusts, 4th Ed. §§ 726–728.

SITTING: PETERS, C. J., FOSTER, WHITEHOUSE, WISWELL, STROUT, SAVAGE, JJ.

WHITEHOUSE, J. In this bill in equity the plaintiffs seek to obtain a judicial construction of the residuary clause of the last will and testament of Mary E. Simpson Southworth. The will is as follows:

"I, Mary Emeline Simpson of Belfast, in the County of Waldo and State of Maine, make this my last will and testament.

" I give and bequeath to Dana B. Southworth of said Belfast the sum of thirty thousand dollars.

" I give and bequeath to Elizabeth Chapman, daughter of Mrs. Mary E. Merrill of Toledo, Ohio, the sum of one thousand dollars.

" I give and bequeath to the First Parish (Unitarian) Society of said Belfast the sum of three thousand dollars.

" I give and bequeath to the City of Belfast in trust forever the sum of five hundred dollars for the purpose following: the income and accrued interest thereon to be used to keep the Josiah Simpson lot in Grove Cemetery in good order and condition by having the grass properly cut in the summer, the monument and stones kept upright and free from moss, and by doing such other things as are necessary to be done for accomplishing the purpose specified above.

" All the rest, residue and remainder of my estate and of which I may die possessed, I give, bequeath and devise to the Central School District of said Belfast for the purpose following:

" 1st.   The amount of this bequest shall be invested, or put at interest, so that an income may accrue and so kept, until a sufficient sum shall be accumulated by increase from interest or profit, by subsequent bequests or gifts or in some other way, to provide for the erection of a school house within said district suitable to accommodate, at least, four of the schools.

" 2d.   When the sum becomes sufficient for the above purpose, the money shall be used for the building such a schoolhouse as is indicated above.

" I hereby appoint Dana B. Southworth and John G. Brooks executors of this my last will and testament."

The testatrix executed this will on the 17th of December 1889, subsequently married Dana B. Southworth, and died on the 21st day of July, 1895. At the date of the will, there were sixteen school districts in the city of Belfast, including Central School District named in the will, which comprised the city proper. Each of these districts was then a body corporate competent to take and hold property by bequest or devise. But before the decease of the testatrix, by section 1 of Chap. 216 of the public laws of 1893, the

school districts in all towns in this state were abolished, and on the first day of March, 1894, when the act took effect, Central School District in Belfast ceased to have a corporate existence for the purpose of taking property by bequest or devise.

It is provided in section 2 of the same act that: "Immediately after this act shall become a law, towns shall take possession of all schoolhouses, lands, apparatus and other property owned and used by the school districts hereby abolished, which districts may lawfully sell and convey. The property so taken shall forthwith be appraised by the assessors of said towns, and at the first annual assessment thereafter a tax shall be levied upon the whole town, or such part thereof as is included within the districts abolished, equal to the whole of said appraisal, and there shall be remitted to the tax payers of each said districts the said appraisal value of its property so taken." Section 4 declares that: "The corporate powers of every school district shall continue under this act so far as the same may be necessary for the meeting of its liabilities and the enforcing of its rights; and any property held in trust by any school district, shall continue to be held and used "according to the terms thereof."

The heirs of Mrs. Southworth claim that the bequest to Central School District, in the residuary clause of the will, was an absolute gift to that body corporate; and inasmuch as the district was abolished and ceased to have a corporate existence before the death of the testatrix, the legacy must be held to have lapsed, and the residue of her estate should now be distributed among her heirs as intestate property. On the other hand, it is contended that the clause of the will in question evinces a charitable purpose on the part of the testatrix to aid in the erection of a schoolhouse on the territory comprised within the limits of Central District, that the district was only named as the instrument, a trustee for the carrying out that intention, and that the City of Belfast, which under the act of 1893, succeeded to the rights and obligations of the district respecting the erection of schoolhouses and the maintenance of schools, should now become the beneficial recipient of the bequest.

I.  Whether the bequest be denominated an "absolute gift," or
a gift in trust for a definite purpose, is of little or no practical
importance with respect to the decision of the question here pre-
sented.  It has been seen, however, from the language of the
residuary clause, that the bequest to the Central District was not
an unqualified and unrestricted gift of a fund to be used for any
and all purposes to which the district might elect to appropriate it.
The purposes of the gift were clearly specified by the terms of the
will, and were not coextensive with the general purposes and full
authority of the district.  The fund could in no event be made
available for the payment of teachers' salaries or other ordinary
expenses involved in the support of the public schools in the dis-
trict.  It was limited to the specific purpose of "erecting a school-
house within said district, suitable to accommodate, at least, four of
the schools."  And it would seem to be entirely appropriate to
say that it was left to the district in trust for that purpose.  The
school district was at once the trustee and the beneficiary.

Thereupon it is contended, in behalf of the heirs, that it is mani-
fest from the terms of the trust directing an accumulation of the
fund for an uncertain and indefinite time, that the bequest might
not become available for the purpose designed within a life or lives
in being and twenty-one years, and hence would become obnoxious
to the rule against perpetuities.

II.  The general rule against perpetuities is undoubtedly "im-
perative and perfectly well established.  .  .  .  .  The limita-
tion in order to be valid must be so made that the estate, or what-
ever is devised or bequeathed, not only may, but must necessarily,
vest within the prescribed period.  If by any possibility the vest-
ing may be postponed beyond this period, the limitation over will
be void.  Fosdick v. Fosdick, 6 Allen, 41; Brattle Sq. Church v.
Grant, 3 Gray, 142.  But the rule against perpetuities concerns
itself only with the vesting or the commencements of estates, and
not at all with their termination.  It makes no difference when
such an estate terminates.  Pulitzer v. Livingston, 89 Maine, 359.

It is suggested in reply, however, that trusts for public charita-
ble purposes are upheld under circumstances under which private

trusts would fail, (*Russell* v. *Allen*, 107 U. S. 163); and the statement is often found in the books that the law against perpetuities does not apply to public charities. But the statement is misleading. It is undoubtedly true that the principle of public policy, which declares that estates shall not be *indefinitely inalienable* in the hands of individuals, is held inapplicable to public charities. *Odell* v. *Odell*, 10 Allen, 1. But it must be remembered that the rule against perpetuities, in its proper legal sense, has relation only to the time of the vesting of an estate, and in no way affects its continuance after it is once vested. The perpetual duration of a charitable trust, after it has become vested, is one of its distinctive characteristics. It is the possibility that the estate left in trust for a charitable purpose, may not vest or begin within the limits of a life or lives in being and twenty-one years, that offends against the rule of "perpetuity" or "remoteness." In this respect a gift in trust for charity is "subject to the same rules and principles as any other estate depending for its coming into existence upon a condition precedent. If the condition . . . . is so remote and indefinite as to transgress the limits of time prescribed by the rules of law against perpetuities, the gift fails ab initio." *Chamberlayne* v. *Brockett*, L. R. 8 Ch. 206. It is well settled, for instance, that if a gift is made in the first place to an individual and then over to a charity upon a contingency which may not happen within the prescribed limit, the gift to the charity is void. *Merritt* v. *Bucknam*, 77 Maine, 253. Perry on Trusts, § 736, and cases cited.

But in the case at bar, it is conceded by the learned counsel for the heirs that if Central School District had been in existence as a corporate body, at the death of the testatrix, the legacy would have vested in the district for a charitable purpose, and thus been removed from the operation of the rule against perpetuities and sustained as a valid gift, even if the directions in the bequest for an indefinite accumulation could not be allowed. *Odell* v. *Odell*, 10 Allen, supra.

In the case cited, the will contained the following bequest: "I give to the trustees of the Salem Savings Bank in trust, one hun-

dred dollars annually for fifty years, to be paid to them by my executors, to be safely invested by said trustees, the interest to be added to the principal by them semi-annually. At the expiration of fifty years the sum, which shall have accumulated, shall be appropriated by a society of ladies from all the Protestant religious societies in Salem, to provide and sustain a home for respectable, destitute, aged native-born American men and women. The above annual payment shall be made from the income of my real estate, which shall be held in trust by my executors until the last payment shall have been made to the trustees of the Salem Savings Bank; then my real estate shall be divided equally among the grandchildren of my late brother James." After an exhaustive examination of the authorities and a critical analysis of the principles relating to questions of accumulations and the rule against perpetuities, the court say with reference to the claim in the will above quoted, and the contention that no title, legal or equitable, would vest in the charity until the expiration of fifty years: " We think such is not the true construction of the will. . . . Here are no words of transfer of title, and the ladies mentioned are not a corporation capable of taking the legal estate. The more reasonable interpretation is that the testator intended to continue the title of the fund in the hands of the trustees to whom he gave it in the first instance, and to clothe the proposed society of ladies with visitatorial powers as managers of the charity." The bequest was accordingly held valid.

So in the case before us. The Central School District having ceased to exist, there is neither trustee nor beneficiary capable of taking the fund; and if the taxpayers and scholars within the limits of that district should be deemed the true beneficiaries, and it were practicable or possible by the substitution of other trustees to secure and restrict the benefit of the fund to the tax-payers of that district alone, such beneficiaries would not be a body corporate capable of receiving and holding the fund, but the title would be held and continued in the hands of the trustees, and the objection arising from the rule against perpetuities thus be obviated.

III.   It is finally contended, in behalf of the city, that there was a general charitable purpose on the part of the testatrix to provide for the health and comfort of the scholars in that district, and that this intention may be effectuated by an application of the doctrine of cy pres, and the gift applied as "nearly as possible" in conformity with the presumed intention of the donor, although the particular form or manner specified in the bequest cannot be followed.

It will be seen, however, that in one aspect the bequest under consideration was not for general charitable purposes, but was to one designated corporation and clearly described and limited purpose.   It was bequeathed to the Central School District in trust for the erection of a "schoolhouse within said district suitable to accommodate, at least, four of the schools," and the practical result was to benefit the taxpayers of a particular district.

In 2 Pom. Eq. Jur. § 1027 the author says: "The true doctrine of cy pres should not be confounded, as is sometimes done, with the more general principle which leads courts of equity to sustain and enforce charitable gifts where the trustee, object and beneficiaries are simply uncertain. . . . . . . In the great majority of the American states the courts have utterly rejected the peculiar doctrine of cy pres as inconsistent with our institutions and modes of public administration.   A few of the states have accepted it in a partial and modified form." And in reviewing the decisions in this country relating to this question and the subject of charitable trusts, Mr. Pomeroy arranged the different states according to three general types.   "The second class," he says "includes the larger portion of the states, in which charitable trusts exist under a somewhat modified form. . . . Such trusts are upheld when the property is given to a person sufficiently certain and for an object sufficiently definite. . . . The doctrine of cy pres is generally rejected."   In this group he places the state of Maine. The third class "includes a very few states which have accepted the doctrine in its full extent.   The states composing this group have not even totally rejected the doctrine of cy pres, although they do not apply it so fully and under such circumstances as would be done in England."   In this group the author places the two states of Massachusetts and Kentucky.   Ib. § 1029.

In section 1027, Mr. Pomeroy makes this further important statement respecting the doctrine of cy pres: "A limitation upon the generality of the doctrine seems to be settled by the recent decisions, that where the donor has not expressed his charitable intention generally, but only by providing for one specific particular object, and this object cannot be carried out, or the charity provided for ceases to exist before the gift takes effect, then the court will not execute the trust; it wholly fails." Among the English cases cited in support of this statement is *Fisk* v. *Atty. Gen'l*, L. R. 4 Eq. 521. In that case a legacy was given "to the Ladies Benevolent Society at L. as part of its ordinary funds, and before the testator's death the Society ceased to exist. The Vice-Chancellor said: "It has been expressly decided by *Clark* v. *Taylor*, 1 Drew. 642, and *Russell* v. *Kellett*, 3 Sm. & Gif. 264, that when a gift was made by will to a charity which has expired, it was as much a lapse as a gift to an individual who had expired."

In 2 Perry on Trusts, § 726, the author says: "So if it appears, from the construction of the whole instrument, that the gift was for a particular purpose only, and that there was no general charitable intention, the court cannot by construction apply the gift cy pres the original purpose. If, therefore, it appears that the testator had but one particular object in mind, as to build a church at W., and his purpose cannot be carried out, the gift must go to the next of kin. And if the gift cannot vest in the first instance in the donees, for the reason that no such donees can be found, or because a corporation is dissolved, the court cannot appoint other donees cy pres." See also *In Re Ovey*, *Broadbent* v. *Barrow*, 20 Ch. Div. 676; 8 App. Cas. 812; *White's Trusts*, 33 Ch. Div. 449; *Langford* v. *Gowland*, 3 Giff. 617.

In *Doyle* v. *Whalen*, 87 Maine, 426, the court say: "If it appears that the gift was for a particular purpose only and that there was no general charitable intention, the court cannot by construction apply it cy pres the original purpose."

The "limitations upon the generality of the doctrine," mentioned by Mr. Pomeroy, are also distinctly recognized in the leading case of *Jackson* v. *Phillips*, 14 Allen, 539, in which the

whole subject is exhaustively treated. In reviewing the decisions the court say: "In all the cases cited at the argument, in which a charitable bequest, which might have been lawfully carried out under the circumstances existing at the death of the testator, has been held, upon a change of circumstances, to result to the heirs at law or residuary legatees, the gift was distinctly limited to particular persons or establishments."

So in Jarman on Wills, 6th ed. 209, the author says: "The general test at the present day, seems accordingly to be whether the scope and terms of the will, or that part of it which relates to charitable disposition indicates an intention to benefit charities, or a class of charities, generally, treating the particular named objects of gift as mere instruments for carrying out such general intention; or to benefit the particular institution specified which the testator has singled out on their own merits as worthy of encouragement. If then the gift fails, by reason of a named institution coming to an end in the testator's lifetime or otherwise, in the former case, the charity will be executed according to the doctrine of cy pres; but in the latter case the gift will lapse, unless the particular charity existed at the testator's death, in which case the legacy will be applied for other similar charitable purposes."

It will be perceived that the second restriction, placed by Mr. Pomeroy upon the exercise of this doctrine, is here distinctly recognized, viz: that it has no application to a trust which was not legally capable of vesting as a charity at the time of the testator's death.

In this important particular, among others, the case of *Atty. Gen'l* v. *Briggs*, 164 Mass. 561, cited in behalf of the city, is widely distinguished from the case before us. Here, both the fund and its income are to be used in the erection of a schoolhouse, thus making a permanent addition to the property in a certain district; but the district was abolished nearly a year and a half before the death of the testatrix, and the fund never vested. There, the income of the fund was to be appropriated for the support of a school in a certain district, and the fund had vested in the trustees and the income actually been used for fourteen years, towards the

support of the school, before the district was abolished.   It was by reason of the change of circumstances resulting from this and other conditions created, after the death of the testator and after the fund had vested in the trustees and used as stated, that the doctrine of cy pres was exercised to the extent of allowing scholars outside, as well as those inside, of the limits of the district to enjoy the benefit of the fund.   And this decision was rendered in a state, where, according to Mr. Pomeroy, the doctrine of cy pres has been carried to the extreme limit found in any of the courts of the United States.

On the other hand, the recent and important case of *Merrill* v. *Hayden*, in our own state (86 Me. 133) is in harmony with the views hereinbefore expressed, and strongly supports the contention of the heirs.   In that case the testator made a residuary bequest to the " Maine Free Baptist Home Missionary Society," a corporation capable of taking the devise at the date of the will, and organized "for the purpose of aiding Free Baptist Churches in this state in need of assistance."   But under subsequent acts of the legislature, another distinct society was incorporated by the name of the " Maine Free Baptist Association," . . "for religious, missionary and educational purposes."   All the property and rights of the old society were transferred to the new association to be used for the purposes named in its charter, and the old one thus became extinct two years before the death of the testator.   It will be observed that, although the purposes of the two societies were not coincident, those of the new one embraced all that was contemplated in the old one.   Funds used in " aiding Free Baptist Churches in need of assistance" would be devoted to "religious and missionary purposes," and the bequest for such purposes would clearly be a public and not a private charity.   " Private trusts," says Mr. Pomeroy, "are for the benefit of certain and designated individuals, in which the cestui que trust is a known person or class of persons.   Public, or as they are frequently termed, charitable trusts, are those created for the benefit of an unascertained, uncertain and sometimes fluctuating body of individuals, in which the cestuis que trustent may be a portion or class of a public com-

munity, as, for example, the poor or the children of a particular town or parish." 2 Pom. Eq. § 987; 1 Perry on Trusts, § 384; *Bangor* v. *Masonic Lodge*, 73 Maine, 428; *Doyle* v. *Whalen*, 87 Maine, 425. A bequest for the support of churches and ministers of the gospel of any Christian denomination has uniformly been held to be for public and charitable purposes. 2 Redfield on Wills 501, and cases cited. If the old society had continued to exist until after the death of the testator, and the bequest had actually vested in it before the change of circumstances, created by the extinguishment of the old society and the incorporation of the new one, then under the doctrine of cy pres as applied in Massachusetts, the new association might have been permitted to take and hold the property bequeathed, although some portion of the fund might thus have been incidentally expended for the distinct "educational purpose" not specified in the old charter. But as the new association was incorporated eleven years after the date of the will and the fund had never vested in the old society, it was properly held by our court that the legacy lapsed to the estate of the testator and descended to his heirs. In the opinion the court say : "He precisely designated, by its correct legal name, a then existing corporation capable of receiving his proposed bounty. He as precisely expressed his intent to bequeath the residue of his estate to that particular corporation. The claimant association was not in the testator's mind, nor within the purview of his bounty, for it did not exist. . . . . We cannot find that the testator intended to make any bequest to the claimant association, the Maine Free Baptist Association, or that he had it in mind to aid in the purposes for which it was incorporated, or to make it the successor to his bounty in case of the extinction of the legatee he selected."

The purposes of the new association in the case cited are not more clearly and widely distinguishable from those of the old society than are the purposes and functions of the City of Belfast from those of Central School District, in the case at bar, even if those of the city are considered solely with reference to the maintenance of schools. In the case of the legacy to the Free Baptist Churches, the immediate beneficiaries were the church organiza-

tions and the ministers of the gospel; the true beneficiaries contemplated by the pious testator were the unascertained and fluctuating mass of the people who would derive profit from the Christian teachings of the church. So the immediate cestui que trust of the bequest to aid in the erection of a new schoolhouse was the Central School District therein named, which is declared by the statute to be a "corporation with power to hold and apply real and personal estate for the support of schools therein, and to sue and be sued." R. S., Ch. 11, § 40. The cause of public education, it is true, might be advanced by erecting a new schoolhouse and thus promoting the health and comfort of the children of the district. While this gift, as well as that to the Free Baptist Churches, is therefore a bequest for a charitable purpose, an important distinction must not be overlooked. With respect to education the statutes of the state impose upon the taxpayers of the district the *public duty* to provide all suitable buildings necessary for the accommodation of the scholars. Hence the true beneficiaries of the trust may well be deemed the taxpayers of the district, and when the school districts were abolished, this obligation was devolved upon the city or town. If the testatrix's gift could have been vested in the school district and been administered as intended, the taxpayers of that district would have been relieved of a public duty to the extent of the fund in question available for the erection of the schoolhouse. But the taxpayers of no other district would have been thus relieved by the gift. If now, any proper authority existed in the court to substitute the City of Belfast for the Central District, as the object of the donor's bounty, no scheme could be devised whereby the taxpayers residing on the territory comprised within the limits of Central School District, could enjoy the exclusive benefit of the gift. All other taxpayers in the city would necessarily receive their ratable share of the fund in common with those of Central District.

It has been seen, too, from the statute of 1893, abolishing school districts, that if the testatrix had died before Central District became extinct, this legacy could not have vested in the city, since the corporate powers of the district would have continued for the

purpose of holding the fund and executing the trust, and the schoolhouse when built would have been the property of the Central District.   And if the district had existed after the death of the testatrix and the schoolhouse had actually been erected, with the aid of the fund in question, before the district was abolished, the law would have required the city on taking possession of the property to remit to the taxpayers of the district the appraised value of the building.

It would seem incongruous to hold that the City of Belfast can now derive more benefit from the property, than it could have done if the testatrix had died before the district was abolished.   Yet such would be the result if the city's contention is sustained.

In the exercise of a spirit of benevolence, mingled with a laudable desire to have her name associated with a public improvement in the place of her residence, the testatrix was willing to relieve the taxpayers of Central School District of a portion of the public burden.   Non constat, that she was willing to extend this bounty to fifteen other districts.   She "precisely designated by its correct legal name a then existing corporation capable of receiving the proposed bounty."   She presumptively had knowledge that this corporation ceased to exist a year and a half before her death, but no codicil is added to her will designating the City of Belfast in the place of Central District.   The court is not properly authorized to substitute its arbitrary conjecture for the clearly expressed will of the testatrix, which thus remained unchanged after full knowledge of a change of circumstances.   It is not the duty of the court to be "curious and subtle" in devising schemes to aid testators in disinheriting their next of kin under circumstances like these.

By the abolition of Central School District, the residuary bequest to that corporation lapsed to the estate of the testatrix, and descended to her heirs as intestate property.

> *Decree accordingly.   Reasonable fees to be allowed out of the fund to the counsel for the defendants.*