### GIRARD TRUST CO. v. RUSSELL.

(Circuit Court of Appeals, Third Circuit. May 5, 1910.)

No. 64 (1,259).

1. CHARITIES (§ 2*)—CONSTRUCTION AND VALIDITY—WHAT LAW GOVERNS.

An agreement or other instrument creating a charitable trust is to be construed and its validity determined by the law of the state where made and to be executed.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 2; Dec. Dig. § 2.*]

2. PERPETUITIES (§ 8*)—RULE AS TO TRUSTS FOR PUBLIC CHARITIES.

A liberal rule of construction is applied to trusts for public charitable purposes, and they will be sustained where private trusts would be held invalid as in violation of the rule against perpetuities.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 57–66; Dec. Dig. § 8.*]

3. CHARITIES (§ 14*)—PURPOSE OF GIFT—PAYMENT OF DEBT OF STATE.

A gift in trust for the payment of the debt of a state, if not defeated by illegal provisions, is a good charitable gift.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 38; Dec. Dig. § 14.*]

4. PERPETUITIES (§ 8*)—REMOTENESS OF GIFT TO CHARITY—ACCUMULATIONS.

Where a gift to charity is absolute, and the gift and the constitution of the trust for charity are contemporaneous and immediate, the fund

may then perhaps be accumulated, subject to reasonable control by a court of equity; but where the accumulation is a condition precedent to the vesting of the gift in charity, and the period of accumulation transgresses the rule against remoteness, the gift is void ab initio.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 57–66; Dec. Dig. § 8.*]

**5.** PERPETUITIES (§ 8*)—VALIDITY OF CHARITABLE TRUST—REMOTENESS.

A settlor deposited money in trust, to be "accumulated for the benefit of the state of Pennsylvania in the way and manner hereinafter mentioned." The trust agreement then provided that the trustee should invest the money and all its accumulations in the public stocks of the state whenever they could be purchased within a certain price, otherwise in government or other stocks, and the proceeds collected until the time should arrive when the fund so accumulated, together with any other sums which might be deposited with the trustee for a like purpose, should "be equal to the debt at that time owed by the state," when it should be paid over to the Treasurer of the state "for the purpose of discharging the whole indebtedness of the state, and for no other purpose whatsoever." It further provided that each state bond purchased by the trustee should be so indorsed as not to be transferable, and to release the state from paying the same except to the trustee; but if at any time the state should pay the interest on any such bond by issuing a new obligation, unless that should be the usual way of paying interest on its remaining debt, the trust should cease, and the fund be paid over to the oldest living male heir of the settlor. *Held*, that the state took no present vested interest in the fund, but was to receive the benefit of it only on a contingency which might never happen, or might happen at some indefinite time in the future which might exceed the limitation of the rule against remoteness, and that the trust was therefore void ab initio, and the fund recoverable by the personal representative of the settlor after his death, as held by the trustee on a resulting trust for the benefit of the decedent.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 57–66; Dec. Dig. § 8.*]

Buffington, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit in equity by Charles Russell, ancillary administrator of the estate of Charles F. McCay, deceased, against the Girard Trust Company. Decree for complainant (171 Fed. 161), and defendant appeals. Affirmed.

A. H. Wintersteen (M. Hampton Todd, Atty. Gen., on the brief), for appellant.

Arthur W. Machen, Jr., and G. W. Pepper, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

LANNING, Circuit Judge. In this case the court is required to decide whether a certain fund, now in the possession of the Girard Trust Company of Philadelphia, is held by it as a charitable trust for the benefit of the state of Pennsylvania, or as a resulting trust in favor of Charles Russell, ancillary administrator of the estate of Charles F. McCay, deceased. The decision must be controlled by our construction of a written agreement, dated December 18, 1848, signed and sealed by the Girard Trust Company, of the first part, and Charles F. McCay, of the second part. Mr. McCay died in Baltimore in 1889, and by his

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bill of complaint McCay's administrator alleges that the trust which McCay by his agreement attempted to create for the benefit of the state of Pennsylvania is "an illegal trust for accumulation, transgressive of the limits allowed for such trusts, and that the ultimate gift to the state of Pennsylvania, or the creditors thereof, will not become vested under the terms of said trust until the accumulated fund equals the amount of the debt of the state, and that such equality may not be attained until after the expiration of the period fixed by the rule against perpetuities as the period within which future interests must vest," and, accordingly, that the Girard Trust Company "holds said accumulated fund as a resulting trust" for the administrator.

The agreement, after setting forth its date and the names of the parties thereto, contains a single recital to the effect that:

"The said Charles F. McCay has deposited with the said company the sum of $377.35 for the purpose of having the same, together with such other additional sums of money as he may hereafter deposit, accumulated for the benefit of the state of Pennsylvania in the way and manner hereinafter mentioned."

It then contains six covenants on the part of the Girard Trust Company, the first, third, and sixth of which are as follows:

"First. That they, the said company, shall and will invest the said sum of three hundred and seventy-seven dollars and thirty-five cents so as aforesaid deposited, and all and every such other sum and sums as may hereafter be deposited, in like manner by the said Charles F. McCay, in the public stocks issued by the state of Pennsylvania, and collect the interest on these stocks, and after deducting two and a half per cent. of this interest as their compensation for performing the duties of this contract, shall and will invest the remaining ninety-seven and a half per cent. of said interest promptly and without delay in the said stocks before mentioned, and shall and will continue collecting the interest on all the said stock, and reinvesting ninety-seven and a half per cent. of the same, so long as said stocks can be purchased by said company at a price not exceeding one hundred and twenty dollars for each one hundred dollars of the said stocks, and in case the price of said stocks rise above said limit the said company shall invest in the public stocks of the United States or in good first bonds and mortgages of real estate until the said Pennsylvania stocks shall fall back to or below said limit, so that the said sum or sums deposited shall accumulate at compound interest until the time shall arrive when the fund accumulated from the said deposits, together with such other sum or sums of money as may be deposited with the said company by others than the said Charles F. McCay for the purpose aforesaid, if any, and the accumulation thereof, shall be equal to the debt at that time owed by the state of Pennsylvania; and the said company further agrees to pay over at that time the said accumulated fund to the Treasurer of the state of Pennsylvania, or other officer or agent legally authorized to receive the same, for the purpose of discharging the whole indebtedness of the state and for no other purpose whatsoever; and the said company further agrees to collect the principal of any of the said stocks and other securities and to reinvest the same in the manner before mentioned."

"Third. And the said company further agree to indorse on every certificate of stock of the state of Pennsylvania which they may purchase for the accumulation fund, if the said certificate shall be for an amount of stock of five hundred dollars or upwards, the following words or words to the same effect: 'This bond being purchased by the Girard Life Insurance, Annuity & Trust Company of Philadelphia, for a trust fund, is not transferable, and the state of Pennsylvania is hereby released from paying the same except to the said company.'"

"Sixth. And the said company further agree that if the state of Pennsylvania shall at any time hereafter pay the interest due on the said stocks be-

longing to the said accumulating fund by issuing to the said company new stocks or other obligations in lieu of money to pay the said interest, then, unless this shall be the usual way in which the interest shall at that time be paid by the said state on the remaining portion of the said debt of the said state, this trust and all benefit and advantage to the said state therefrom shall cease and become determined, and the said company shall pay over to the oldest male heir of the said Charles F. McCay then living, his executors, administrators, or assigns, the whole amount belonging to the said accumulating fund at that time uninvested in the said stocks of the state of Pennsylvania, and also all the amounts they shall thereafter receive from the said state as principal and interest on said stocks, and all stocks of the United States, and bonds and mortgages and interest thereon belonging to the said accumulating fund, reserving only to themselves their two and a half per cent. on all interest received by them, which per cent. is above provided as their compensation for performing the duties of this contract."

McCay, during his lifetime, increased his deposits to the sum of $2,000. The accumulated fund is now about $20,000. The decree of the court below adjudges:

"That the trusts of the deed of trust executed on December 18, 1848, between Charles F. McCay and the Girard Trust Company are illegal trusts for accumulation and are void; that the gift of the accumulated trust funds to the state of Pennsylvania is a gift of which the vesting is postponed beyond the limit allowed by the rule against perpetuities; and that the defendant, the Girard Trust Company, holds said trust funds as a resulting trust for the use of the complainant, Charles Russell, ancillary administrator of the estate of Charles F. McCay."

An accounting and payment to the ancillary administrator was also directed to be made. From this decree the Girard Trust Company now appeals.

In Russell v. Allen, 107 U. S. 163, 2 Sup. Ct. 327, 27 L. Ed. 397, Mr. Justice Gray said:

"By the law of England from before St. 43 Eliz. c. 4, and by the law of this country at the present day (except in those states in which it has been restricted by statute or judicial decision, as in Virginia, Maryland, and more recently in New York), trusts for public charitable purposes are upheld under circumstances under which private trusts would fail. Being for objects of permanent interest and benefit to the public, they may be perpetual in their duration, and are not within the rule against perpetuities; and the instruments creating them should be so construed as to give them effect, if possible, and to carry out the general intention of the donor, when clearly manifested, even if the particular form or manner pointed out by him cannot be followed."

Language to the same general effect was used by this court in Handley v. Palmer, 103 Fed. 39, 43 C. C. A. 100. The courts of the state of Pennsylvania have likewise declared themselves in favor of a liberal rule of construction for the support of gifts intended for charity. In Franklin's Administratrix v. Philadelphia, 2 Pa. Dist. R. 435, Judge Arnold, speaking of the law of the state of Pennsylvania, said:

"The rule with us, when a charity is created, is to adopt every means to uphold it; and every attack upon it, unless founded upon the strongest reasons, shall fail."

And in Domestic & Foreign Missionary Society's Appeal, 30 Pa. 425, Mr. Justice Strong, speaking for the Supreme Court of the state of Pennsylvania, said:

"No better illustration is needed of the extent to which the law of Pennsylvania has gone in sustaining charitable bequests than is found in the language of this court in Witman v. Lex, 17 Serg. & R. 93 [17 Am. Dec. 644] where it was said: 'It is immaterial whether the person to take be in esse or not, or whether the legatee were, at the time of making the bequest, a corporation capable of taking or not, or how uncertain the objects may be, provided there be a discretionary power vested anywhere over the application of the testator's bounty to those objects, or whether their corporate designation has been mistaken. If the intention sufficiently appears on the bequest, it would be held valid.' "

The agreement is a Pennsylvania contract, and should be construed in accordance with Pennsylvania law. As was said by Chief Justice Taney in Fontain v. Ravenel, 17 How. 369, 395, 15 L. Ed. 80:

"In a suit by an heir or representative of the testator, authorized from his place of residence to sue in a court of the United States, to recover property or money bequeathed to charity, the court must of necessity examine whether the bequest was valid by the laws of the state, and barred the claim of the heir or representative."

See, also, Russell v. Allen, 107 U. S., at page 170, 2 Sup. Ct. 327, 27 L. Ed. 397.

If, then, the agreement shows a purpose on the part of McCay to establish a trust for charity, the trust should be sustained, unless it be founded upon conditions that are obnoxious even to the liberal rule of construction applicable to charitable trusts. That a charity was intended seems clear, for the use declared was the payment of the debt of the state of Pennsylvania; and a gift in trust for the payment of the debt of a state, if not defeated by illegal provisions, is a good charitable gift. Newland v. Attorney General, 3 Meriv. 684; Nightingale v. Goulburn, 5 Hare, 484; Dickson v. United States, 125 Mass. 311, 28 Am. Rep. 230; Russell v. Allen, 107 U. S. 163, 170, 2 Sup. Ct. 327, 27 L. Ed. 397; Stuart v. City of Easton, 74 Fed. 854, 21 C. C. A. 146.

The real question in the case is the one adjudicated by the decree of the court below, namely, whether McCay intended that the money deposited by him with the Girard Trust Company on December 18, 1848, should be an absolute, immediate gift for the benefit of the state of Pennsylvania, or whether it should vest in the proposed charity when, and only when, it, with its accumulations, should equal the debt of the state. The intent to establish a charity being clear, we should not declare the donor's scheme an illegal one, if we can, under the law, avoid doing so. Indeed, we should look at the agreement with an eye keen to discover reasons for sustaining it.

In favor of a construction of the agreement holding that there was a gift to charity contemporaneously with the deposit of the first sum of $377.35, it is said that the words "has deposited," in the recital contained in the agreement, taken with other parts of the agreement, indicate a purpose to make an immediate gift to charity, and that the words of the recital concerning the "way and manner" in which the fund should be accumulated relate only to the manner of administering a trust fund already given to charity. It has also been suggested that such purpose is confirmed by the provision of the third covenant that every state bond for the sum of $500 or more, purchased for the fund,

shall be indorsed by words destroying its transferability and releasing the state from paying the same except to the trust company.

On the other hand, however, it must be observed: (1) That the recital declares that the purpose for which the deposit was made was to have it accumulated, "for the benefit of the state of Pennsylvania," it is true, but "in the way and manner hereinafter mentioned." (2) That the "way and manner" in which the fund was to be accumulated was, as shown by the first covenant, by investing it in public stocks of the state of Pennsylvania, collecting the interest thereon, adding the interest, less the trust company's commissions, to the corpus, and investing the accretions in like stocks, or for want of them in bonds and mortgages, until the accumulated fund "shall be equal to the debt *at that time* owed by the State of Pennsylvania," and that the trust company "shall pay over *at that time* the said accumulated fund to the Treasurer of the state of Pennsylvania, or other officer or agent legally authorized to receive the same, for the purpose of discharging the *whole* indebtedness of the state, *and for no other purpose whatsoever.*" (3) That the indorsements on the state bonds purchased for the fund, required by the third covenant, did not release the state from paying the same, at maturity, to the trust company, the holder thereof. (4) That the fund should never be paid to the state at all if it should violate the condition mentioned in the sixth covenant, and· that, in case of such violation, it should be paid to the donor's oldest male heir living at the time of such violation. (5) That there are no express words of gift in the agreement. (6) That the recital expressly refers to the "way and manner" of accumulating the fund mentioned and defined in the later parts of the agreement.

These provisions, in our judgment, make it clear that the gift to charity was not absolute, but conditional. The deposit of the $377.35 with the trust company and the gift to charity were not intended to be contemporaneous. While the gift to McCay's oldest male heir was void because it violated the rule against perpetuities, or rather the rule against remoteness, in that it postponed the investment of the fund in that heir possibly until beyond a life or lives in being and 21 years and 9 months (Hopkins v. Grimshaw, 165 U. S. 342, 355, 17 Sup. Ct. 401, 41 L. Ed. 739; City of Philadelphia v. Girard's Heirs, 45 Pa. 9, 27, 84 Am. Dec. 470), still the language by which that invalid gift was sought to be made cannot be rejected, when we read the agreement for the purpose of ascertaining the donor's intent concerning the time when the gift to charity should take effect. We think the conditional gift to the oldest male heir was not intended as a gift over, after the determination of a precedent, but forfeited, gift to charity, but that the purpose of the donor was to provide that the fund should go to his oldest male heir if the state should violate the condition precedent to the investment of the fund in the charitable object mentioned. This view of the sixth covenant is confirmed by the language of the first covenant, which prescribes the "way and manner" in which, and the period during which, the moneys should be accumulated, the time when they should be paid over to the state, and the purpose for which they should be paid to the state. That purpose is the sole charitable purpose mentioned in the agreement. It is for "discharging the whole indebtedness

of the state, and for no other purpose whatsoever." No general charitable purpose is expressed. After reading and re-reading the agreement with the utmost care, we are convinced that the able argument of the learned counsel for the appellant to the effect that the deposit of $377.35 with the trust company and the gift to charity were contemporaneous events, and, therefore, that the direction as to the "way and manner" of accumulating the moneys was a direction concerning the administration of a fund already given to charity, is not sound. The gift to charity was conditional. The donor did not intend that his deposit should ever take effect as a gift to charity if, at any time before the accumulated fund should equal the state's debt, the state should violate the condition mentioned in the sixth covenant, nor did he intend that it should take effect as a gift to charity before the time when the accumulated fund should equal the state's debt. He did not know, nor could any one know, that that time would ever come. The vesting of the fund in charity was therefore postponed, possibly forever. In such circumstances, have we the power to give effect to the donor's charitable intent?

When a gift to charity is absolute, and the gift and the constitution of the trust for charity are contemporaneous and immediate, the fund may perhaps then be accumulated, subject to reasonable control by a court of equity. Some American cases so hold (St. Paul's Church v. Attorney General, 164 Mass. 188, 203, 204, 41 N. E. 231; Woodruff v. Marsh, 63 Conn. 125, 137, 138, 26 Atl. 846, 38 Am. St. Rep. 346; Brigham v. Peter Bent Hospital, 134 Fed. 513, 524, 67 C. C. A. 393), though in England it has been held that where there is an absolute immediate gift to charity, payable with accumulated income at a future time, no one but the charity being interested therein, the charity may put an end to a direction to accumulate (Wharton v. Masterman, App. Cas. [1895] 186; Gray on Perpetuities, § 679a). The American cases rest on the doctrine that, since the rule against perpetuities is not applicable to a gift to charity, a direction to accumulate for a period longer than a life in being and 21 years shall not make the gift void, but that a court of equity may limit the period of accumulation where in its judgment a sound public policy demands that the period prescribed by the donor should be shortened. But where the accumulation is a condition precedent to the vesting of the gift in charity, and the period of accumulation transgresses the rule against remoteness, the gift, by the great weight of authority, is void ab initio. It was so held in Hillyard v. Miller, 10 Pa. 326. It was said, it is true, in Odell v. Odell, 10 Allen (Mass.) 1, 12, that Hillyard v. Miller was overruled by Philadelphia v. Girard's Heirs, 45 Pa. 9, 84 Am. Dec. 470. But we do not so understand the later case. Chief Justice Lowrie, in referring to that part of the opinion in Hillyard v. Miller which dealt with this question, said:

"It is quite clear that the secondary trust was void, although a charity, because it might not become vested within the time allowed for the vesting of executory devises."

In Jocelyn v. Nott, 44 Conn. 55, where lands were devised to trustees for a charitable use, subject, however, to a condition contravening the rule against remoteness, the devise was held to be void. In Brooks v. Belfast, 90 Me. 318, 38 Atl. 222, it was said:

"It is suggested in reply, however, that trusts for public charitable purposes are upheld under circumstances under which private trusts would fail. Russell v. Allen, 107 U. S. 163 [2 Sup. Ct. 327, 27 L. Ed. 397]. And the statement is often found in the books that the law against perpetuities does not apply to public charities. But the statement is misleading. It is undoubtedly true that the principle of public policy, which declares that estates shall not be indefinitely inalienable in the hands of individuals, is held inapplicable to public charities. Odell v. Odell, 10 Allen [Mass.] 1. But it must be remembered that the rule against perpetuities, in its proper legal sense, has relation only to the time of the vesting of an estate, and in no way affects its continuance after it is once vested. The perpetual duration of a charitable trust, after it has become vested, is one of its distinctive characteristics. It is the possibility that the estate left in trust for a charitable purpose may not vest or begin within the limits of a life or lives in being and 21 years that offends against the rule of perpetuity or remoteness. In this respect a gift in trust for charity is 'subject to the same rules and principles as any other estate depending for its coming into existence upon a condition precedent. If the condition * * * is so remote and indefinite as to transgress the limits of time prescribed by the rules of law against perpetuities, the gift fails ab initio.'"

It is urged by the counsel for the appellant that the rule against perpetuities or remoteness is applicable to gifts to charity only where there is a prior gift or a "first taker," whose estate may continue for a period beyond the time limited by the rule against perpetuities or remoteness. As there is no "first taker" in the case now in hand, it is said that the rule mentioned does not defeat the gift. The argument ignores the fact that by the McCay agreement there is no gift, either to charity or to any other party, except upon a condition which contravenes the rule. If by the agreement there had been expressed an intention to make an absolute immediate gift to charity, we should have a very different case before us. There are many cases in the books where immediate gifts to charity have been sustained, although they have been made payable to corporations not formed when the gifts to charity took effect. So there are many cases where immediate gifts to charity have been sustained, notwithstanding illegal directions concerning the manner of administering the charity. But these cases are not in point. Here the gift was not vested in charity when McCay deposited his money with the Girard Trust Company. As is said by Prof. Gray in his work on Perpetuities (section 674):

"If the accumulation is a condition precedent, and the time of accumulation is or may be too long, the gift of the accumulated fund is bad altogether. The settlor or testator has said that the gift shall vest at a certain time, or on a certain event. The courts cannot substitute a shorter time or a speedier event."

Our conclusion is that the gift to charity was void ab initio, and, consequently, that the Girard Trust Company held the deposits made by Charles F. McCay, and all accretions thereto, as a resulting trust in favor of Charles F. McCay, his executors, administrators, and assigns. As McCay is now dead, his administrator is entitled to the fund.

The decree of the court below was correct, and is affirmed. The costs of both parties, both in this court and the court below, should be paid out of the fund.

BUFFINGTON, Circuit Judge (dissenting). There is no controversy as to the law in this case. Concededly, the gift was for a law-

ful charity. The only question· is the construction of McCay's deed. Did the state of Pennsylvania take a present interest in the gift when McCay gave the fund "for the purpose of discharging the whole indebtedness of the state and for no other purpose whatsoever"? The court below held, and this court concurred in its view:

"That the·gift of the accumulated trust fund to the state of Pennsylvania is a gift of which the vesting is postponed beyond the limit allowed by the rule against perpetuities."

Now to me it is clear that McCay's deed vested in the state, ab initio, a present interest in the fund. True, the full, absolute enjoyment thereof was postponed until the gift's accumulations equaled the charity in view; but when the fund passed from the donor a present interest in the corpus thereof passed to the state. I say this because clause 1 made it ·compulsory on the trustee to invest, and as they were paid, to reinvest, the fund in the bonds of the state of ·Pennsylvania. In reality the gift created, in private hands, a sinking fund for the state; and will it be contended that a state, a municipality, a private corporation, has no interest in a sinking fund which in form continues an indebtedness that in reality is paid as soon as sinking fund ownership accrues? But McCay went further. He linked the state's interest to this private sinking fund, and gave it a present interest therein, by the third provision of his deed, which made it compulsory on the trustee, as it turned the gift into Pennsylvania state bonds, to stamp on each one:

"This bond, being purchased by the Girard Life Insurance, Annuity & Trust Company of Philadelphia for a trust fund, is·not transferable, and the state of Pennsylvania is ·hereby released from paying the same, except to the said company."

This indorsement in furtherance of the charity in view, and made in accord with the donor's directions, released the state from payment of such bond. If the trustee had diverted such released bond from the sinking fund, and transferred it to third persons, surrendered it to McCay, or even to his personal representatives, will it be contended the state could be held for its already released bond thus sought to be revivified? That the bonds were, in the donor's view, released by the indorsement upon them, is shown in the provision for paying over in the event of forfeiture, viz.:

"Shall pay over to the oldest male heir of the said Charles F. McCay, then living, his executors, administrators, or assigns, the whole amount belonging to the said accumulating fund at that time *uninvested* in the said stocks of Pennsylvania, and also all the amounts they shall thereafter receive from the said state as *principal and interest on said stocks*."

But it is said the indorsement on the bond did not release the payment of the ·bond as against the trustee, and therefore no interest in the gift .vested in the state. But this contention loses sight of the real purpose of this narrow exception to the broad, general release to, the state. It was an exception made simply to provide for reinvestment in other state bonds and reindorsement thereon of the same release. In other words, payment by the state to its own trustees was for reinvestment in· its. own reindorsed and re-released securities. It was a

mere continuance of a state debt extinction, which began, and had to begin, when the gift was made.

Finding such provisions in McCay's deed, and bringing to its construction the virile purpose of the law to uphold the intent of donors of public charities, for "the rule with us," as said by Judge Arnold, supra, "when a charity is created, is to adopt every means to uphold it, and every attack upon it, unless founded on strong reasons, shall fail," I am constrained to differ from the court's construction. And in so doing I cannot but believe the view here expressed is in accord with the intent of the donor, who during the 40 years of his life succeeding his gift never asserted the absence of interest of his state in his gift. This fact is a significant aid to construction, for in Attorney General v. Drummond, 1 Dr. & War. 368, Chancellor Sugden well said:

"Tell me what you have done under such a deed, and I will tell you what that deed means."