| 32 | 434 |
| 144 | 34 |

## Smith *versus* Townsend.

After a possession of thirty years under a devise in fee, there is a presumption of title out of the Commonwealth.

A testatrix, in 1793, devised a house and lot, subject to the express condition, that the owners thereof should not build, nor suffer any building to be erected, in the garden spot of said house, nor open, nor permit, or suffer to be opened, if they could in anywise prevent it, an alley through the court in which said dwelling-house was situated; and, in case of failing to perform this condition, she devised the premises over to the trustees of a charity: *Held*, that this devise over was void for remoteness, as a conditional limitation or executory devise; and that the devisees took an estate in fee, discharged from the condition.

In order to pass a title under the Act of 18th April 1853, all persons having a present interest must be made parties; and, *it seems*, that contingent or executory interests will not be barred unless the title be set forth in the petition, and the purpose be expressed to bar such contingent interests.

ERROR to the District Court of *Philadelphia*.

This was an action of *assumpsit* by Joseph B. Townsend, trustee, against Isaac R. Smith, to recover the sum of $4000, with interest, being the amount of the defendant's bid for certain property in St. James street, in the city of Philadelphia, sold by the plaintiff, under an order of the Orphans' Court, by virtue of proceedings under the Act 18th April 1853, and purchased by the

[*Smith v. Townsend.*]

defendant. The only question raised was as to the title which would pass by the sale.

Deborah Morris, by her last will, dated .the 16th of 3d month 1793, devised the premises in question to Phœbe Morris, for life, then to Elizabeth Wistar for life, and after her decease to her issue. These estates were all subject to the following express condition :—

" And I do hereby declare this devise, and the several successive estates, hereby limited and created, to be upon this express condition, viz., that the owners of the several messuages and lots in this clause mentioned, shall not build, nor suffer any building to be erected, in the garden spot on the south end of my said dwelling-house; nor open, nor permit or suffer to be opened, if they can in any wise prevent it, an alley through the court in which my said dwelling-house is situate; and in case of failing in performing this condition, I hereby devise all and singular the premises in this clause mentioned and devised, to Nicholas Waln, James Bringhurst, Thomas Fisher, Samuel Coates, Henry Drinker, Samuel Hopkins, Isaac Cathrall, Thomas Scattergood, Samuel Samson, John Field, Joshua Cresson, and John Drinker, their heirs and assigns, for the purpose of repairing, or building, or rebuilding the alms house, or a house of employ, for the better accommodating the poor of our society."

On the 25th November 1826, Phœbe Morris surrendered her life estate in the premises to Elizabeth Mifflin ; and on the same day, the said Elizabeth, for the purpose of barring her estate tail therein, conveyed the same to Israel W. Morris in fee, " in trust, nevertheless, to permit and suffer Phœbe Morris to receive the rents, issues, and profits thereof, during her natural life, without impeachment of waste ; and from and after her decease, in trust to permit and suffer the said Elizabeth Wistar, to receive the same during her natural life ; and from and after her decease, then, as to one equal third part thereof, in trust to receive the rents, issues, and profits thereof, and after all just and reasonable deductions for taxes, charges, repairs, and other expenses, to pay the residue of such third part to Richard M. Wistar (son of the said Elizabeth Wistar), during his natural life, and in case he shall die leaving lawfully begotten children or grandchildren, to survive him, then the said Israel W. Morris, his heirs or assigns, shall be and stand seised of the said one-third to the use of all such children or grandchildren, their heirs and assigns, equally to be divided among them, the grandchildren taking the shares which their parents would have taken; and as to the remaining two-thirds thereof, to the use of Mifflin Wistar and Elizabeth Wistar, son and daughter of the said Elizabeth Wistar, the grantor, as joint tenants, their heirs and assigns, and to and for no other use, intent, or purpose whatsoever.'

[Smith *v.* Townsend.]

The said Phœbe Morris and Elizabeth Wistar, the *cestuis que trust* for life, afterwards departed this life; and Elizabeth Wistar, the daughter, also died before her mother, unmarried and without issue, leaving as her heirs at law her two brothers Richard M. Wistar and Mifflin Wistar.

At September Term 1832, Richard M. Wistar was discharged as an insolvent debtor, having executed an assignment of all his estate to Joseph P. Norris; and on the 20th October 1832, the Court of Common Pleas appointed Allen Ward trustee, in the place of the said Joseph P. Norris. And on the 26th October 1838, the said trustee sold and conveyed Richard M. Wistar's estate in the premises to Martha Shaw.

At March Term 1838, the estate of Richard M. Wistar in the said premises was taken in execution, and sold by the sheriff to the said Martha Shaw. The sheriff's deed is dated the 29th September 1838.

On the 29th October 1847, Martha Shaw, in contemplation of marriage with James M. Hammill, conveyed all her estate to Simon Brolasky, for the uses and purposes therein mentioned, with power to revoke and alter the uses therein declared, and to declare new and other uses of and concerning the same.

On the 10th December 1851, Martha Hammill, being then a widow, executed a deed revoking the uses in the said marriage settlement; and declared that the trustee should hold the said premises, in trust to convey the same to her in fee. And accordingly, on the following day, Simon Brolasky, the trustee, conveyed to Martha Hammill in fee.

Elizabeth Wistar, by her last will, dated the 26th November 1834, devised all her estate to her son, Mifflin Wistar, in fee. And on the 5th May 1846, Mifflin Wistar and wife conveyed their interest in the premises to Sarah P. Howard in fee.

Sarah P. Howard, by her last will, dated the 8th month 8th 1844, devised the residue of her estate, among which was included her interest in the said premises, as follows:—

She directed the same to be divided into four equal parts, by five judicious men to be chosen by her executors; and one of such fourth parts she devised unto her son Joseph B. Cooper in fee; and the other three-fourths parts thereof, she devised to her executors, their heirs and assigns, in trust, as to one of the said three parts, to receive and pay over the rents and income thereof to her daughter, Emma Howard, for life; and on her decease, to convey the same to her issue in fee; and, if she leave no issue to survive her, then for such uses as she might appoint by will; and in default of such appointment, then to go in trust as the other three of the said residuary shares are limited by said will; and, as to one other of the said three shares in trust, to receive and pay the rents and income thereof to her daughter, Eliza B. Edwards, dur-

[Smith *v.* Townsend.]

ing her natural life, to her sole and separate use, and on her decease, to grant, convey, and assign the same to the lawful issue of the said Eliza in equal shares in fee; but, if she leave no such issue, then to such person or persons, and for such estate and estates, as the said Eliza may appoint by her will, and in default of such issue, and in default of such appointment, then in trust as the other three shares of her residuary estate are limited and given by the said will; and, as to the other of the said three shares, in trust, to receive and pay the rents and income thereof to Thomas and Sarah P. Howard, children of her deceased son, Charles P. Howard, in equal shares during their respective lives; and, if either of them should die without lawful issue, then the moiety of the one so dying, should go to the survivor; and upon the decease of the said Thomas and Sarah P., respectively, then to grant and convey one-half of this said last-mentioned share, unto the issue of each of them in fee; and, if either die without issue, then also to grant and convey the half of the one so dying without issue to the issue of the other, after the decease of such other, in fee; and in case both of her said grandchildren should die without leaving issue surviving, then she devised the said share in like manner as the other three shares of her said residuary estate were therein limited and given; provided, always, that if the said Thomas and Sarah P. should both die, without leaving issue, and leaving their mother to survive them, then their said mother, Mary Howard, should have the income for her life, after their decease, of the last-mentioned fourth, or share of said residuary estate; and, provided also, that in case either the said Joseph B. Cooper, Emma Howard, or Eliza B. Edwards, should die without leaving lawful issue, but leaving a husband or wife, then such husband or wife, should have for life, the income of the fourth part or share devised to or for the benefit of said children respectively.

And the said testatrix thereby appointed the said Joseph B. Cooper, Emma Howard, Samuel H. Edwards, and George Vaux Bacon, executors of her said will.

Letters testamentary to the estate of the said Sarah P. Howard were in due form of law granted to the said Joseph B. Cooper, Emma Howard, Samuel H. Edwards, and George Vaux Bacon.

The said George Vaux Bacon afterwards departed this life; the said letters testamentary, as respects the said Joseph B. Cooper, were revoked; and the said Samuel H. Edwards was, on his own petition, discharged as an executor and trustee under the said will, by the Orphans' Court, on the 3d day of December 1852; leaving the said Emma Howard, since intermarried with William L. Edwards, the sole surviving acting executrix and trustee of the said will.

On the 4th January 1845, Israel W. Morris, trustee under the

deed of Elizabeth Wistar, was discharged by the Court of Common Pleas, on his own petition, and Joseph B. Townsend, the plaintiff, was appointed trustee in his stead.

On the 7th March 1856, on petition of Thomas Evans, on behalf of the trustees of the alms house of the Society of Friends, the Orphans' Court appointed Thomas Williamson and Dr. Charles Evans, trustees, in the place of those named in the will of Deborah Morris, who had all departed this life. And on the 6th June 1856, the said Thomas Williamson and Dr. Charles Evans presented a petition to the Orphans' Court, setting forth that St. James street had been, by public authority, opened through a portion of the said garden lot, and that the remainder thereof was a narrow strip, which had been left open in accordance with the will of the testatrix; but instead of being a benefit to the neighbourhood as intended by the testatrix, it had now become detrimental and injurious thereto. That by reason of the great value of the preceding estates, the petitioners had no reason to expect that their interest in the same would ever vest in possession. They therefore prayed for permission to make sale of the same, under the authority of the Act 18th April 1853, to the present owners of the preceding estates, for the price of $400.

This petition was referred to a master, who reported in favour of the sale, and accordingly the court granted the prayer of the petition. And on the 4th September 1856, Thomas Williamson and Dr. Charles Evans conveyed to Joseph B. Cooper, Charles M. Cooper, Joseph B. Cooper, Jr., Emma H. Edwards, wife of William L. Edwards, Eliza B. Edwards, wife of Samuel H. Edwards, Howard Edwards, Eliza B. Edwards, Jr., Sallie H. Peterson, wife of Charles J. Peterson, Thomas H. Peterson and Joseph B. Townsend, Esq., trustee, in consideration of $400. "All those, the several mansion or dwelling-houses, tenements, chair-house, stables, garden-lot, and other lots or pieces of ground, mentioned, specified, and referred to, in and by the hereinabove recited clauses of the last will and testament of Deborah Morris, deceased." To hold to the said parties of the second and third parts, their respective heirs and assigns, for ever, in accordance with their respective legal investiture and seisin of the same, or of the several parts and parcels thereof.

On the 3d October 1856, Joseph B. Cooper and Emma H. Edwards (late Howard), sole surviving acting executrix and devisee in trust, under the will of Sarah P. Howard, presented their petition to the Orphans' Court, setting forth the previous title to the premises. Also, that the said Emma H. Edwards had then no issue, that the said Eliza B. Edwards, the wife of the said Samuel H. Edwards, had then issue two children, namely, Howard Edwards, then of full age, and Eliza B. Edwards, Jr., a minor, of the age of about sixteen years. That Thomas Howard, a

grandson of the said testatrix, Sarah P. Howard, died since her decease, intestate, unmarried and without issue; and, that his sister Sarah P. Howard, was married to, and then the wife of Charles J. Peterson, and had then issue one child, named Thomas H. Peterson, about nine years of age.

Further, that there were specialty debts of the said Sarah P. Howard, deceased, unsatisfied, to the amount of about $20,000; and, that the improvements and buildings on the said premises were old and dilapidated, and had been then recently injured by fire to a considerable extent. That the ground whereon the said buildings stood had become valuable, and the trustees aforesaid, parties in interest, not being able to make the necessary improvements on the property to make the same properly productive, it was, as the said petitioners averred and believed, greatly to the interest of all parties having any then present interest therein, that the same should be sold. Whereupon they prayed that the said court would order and decree, that the said real estate should be sold, agreeably to the laws of this Commonwealth in such case made and provided.

The said James M. Hammill and Martha his wife, Joseph B. Townsend, trustee, William L. Edwards, Emma H. Edwards, Samuel H. Edwards, Eliza B. Edwards, Howard Edwards, Eliza B. Edwards, Jr., by her guardian Samuel H. Edwards, Charles J. Peterson, Sarah H. Peterson, and Thomas H. Peterson, by his guardian *ad litem*, Charles J. Peterson, the parties legally or equitably interested in the real estate and premises mentioned in the aforesaid petition, had, by writing under their hands, acknowledged notice of the foregoing application, and being satisfied of the propriety of the sale being decreed by the court as therein prayed for, had assented to the same, and concurred in the application of the petitioners.

The court referred this petition to a master, and on his report in favour of a sale, decreed that the premises should be sold at public sale; and appointed Joseph B. Townsend, the plaintiff, trustee, to execute the said order and decree.

On the 18th November 1856, the plaintiff exposed the premises at public sale, and the defendant became the purchaser at $4000; which sale was confirmed by the Orphans' Court.

The present action was brought against the defendant to recover the amount of his bid. And on the trial, there was a verdict for the plaintiff for $4148, subject to the opinion of the court upon a point reserved, to wit:—Whether the evidence produced showed that the plaintiff was able to convey to the defendant a title to the premises, in fee simple, clear of all encumbrances and trusts whatsoever.

The court below, afterwards, entered judgment for the plaintiff,

[Smith *v.* Townsend.]

upon the reserved point; to which the defendant excepted, and here assigned the same for error.

*B. Johnson* and *W. A. Porter*, for the plaintiff in error.

*Eli K. Price*, for the defendant in error.

The opinion of the court was delivered by

STRONG, J.—The sole question raised by this record is, whether the title offered to the defendant below and plaintiff in error is a fee simple, clear of all trusts and encumbrances, except the proportionate part of a twelve pounds ground-rent. It is queried, indeed, whether this question is really presented; whether the plaintiff in error is not liable, at all events, for his bid, inasmuch as the sale was effected under an order of the Orphans' Court. Without inquiring, however, how that may be, we prefer resting our judgment upon the validity or invalidity of the title offered, especially as that was the question reserved in the District Court.

The title is derived from Deborah Morris, who, in 1793, devised the property, being a lot in the city of Philadelphia, to Phœbe Morris for life, with a remainder over for life, remainder in fee; and, under the will of the testatrix, it has ever since been held. This is sufficient to raise a presumption that the title was in Deborah Morris at the time of her death, and a conclusive presumption as to every one except the Commonwealth. And even as against the Commonwealth, after enjoyment by a private person for such a length of time, there is a presumption of a grant. This is especially true, in regard to the earlier settled portions of the state, and pre-eminently in Philadelphia, where most of the lands were granted by the proprietaries before the divesting act. In contests between individuals, this presumption becomes final after thirty years' continuous possession: Act of 14th April 1855, *Pamph. L.* 225. It cannot be doubted, therefore, that Deborah Morris held a fee simple in the property at her death in 1793.

By her will, she imposed upon the devisees of the lot, and upon the subsequent owners thereof, a restriction against building, or suffering any building ·to be erected, on the garden spot on the south end of her dwelling-house (this being the property, the title to which is now questioned), or opening, or suffering to be opened, if they could in anywise prevent it, an alley through the court in which her dwelling-house was situated. She declared the devise to be on that "express condition," and added, that in case of failure to perform this condition she gave the property over to Nicholas Waln and eleven others, in fee, in trust for a charitable use. It is urged, that this restriction against building still remains, and that, consequently, there is an encumbrance upon the property.

The will of the testatrix passed the entire fee simple in the

property.  No interest was left undisposed of.  There was no reversion in Mrs. Morris or in her heirs.  Of course, notwithstanding the language of the will, the fee devised to Waln and others was not an estate on condition, for the benefit of a condition can only be reserved to the grantor or devisor, or to his heirs.  On breach of the condition, the grantor, or the heirs of the devisor, may enter and terminate the estate on condition.  Only they can do it.  But when nothing is reserved by the grantor or devisor; when the whole estate is granted or devised, as where there is a limitation over in fee to a third person, in case of a breach of the condition, there can be no right of entry.  Nor is the devise over to Waln and others a contingent remainder, because the precedent estate was a fee simple, and as the fee simple is the whole estate, even though a base fee, there was nothing left to constitute a remainder.  Not being then an estate on condition, nor a contingent remainder, it is necessarily a conditional limitation, and must take effect, if at all, as an executory devise: *Fearne on Rem.* 399.

Regarding, then, the limitation over to Waln and others as an executory devise, is it valid?  The condition upon which its coming into existence was made to depend was, that a building should be erected on the garden lot, or an alley opened or suffered to be opened through the court, &c.  The contingency contemplated might not occur during any number of successive lives—might never occur.  The rule, however, is that a limitation over is too remote, if it *must* not take effect within a life or lives in being, and twenty-one years and nine months thereafter.  The question is not whether it *may* take effect within that period, but whether it *must*.  If it must not "*ex necessitate*," then it is void as too remote, and tending to perpetuity.  Tried by this rule, the limitation over to Waln and others was absolutely void.

But if the devise over be void on account of its remoteness, or for any reason, then the earlier devisees necessarily took the lot as if the condition or restriction had never been attempted to be made; took it discharged of the condition: 1 *Jarman on Wills* 783; *Smith on Executory Interests* 699, 700; Proprietors of the Church in Brattle street *v.* Green *et al.*, 3 *Gray* 142, and the cases therein cited.

Whether the testatrix, after having given a fee simple in the lot to the earlier devisees, could, as a condition subsequent, impose upon them a restriction against using the property devised for buildings, we do not care to inquire.  Without expressing any opinion upon that subject, we hold that the limitation over on failure to perform the condition is void, and consequently, that the first takers took the estate discharged from the restriction.

No interest in it was limited to any others than to the executory devisees.  It was not a privilege given to the public or to the neighbourhood; nor was it an easement given to the devisees of

the other house, or other half of the garden lot.    Cross-easements are out of the question in the case.    The testatrix, by her devise over, has defined for whose benefit the condition was imposed. She contemplated no other penalty for a breach than a transmission of the property to her executory devisees.

This view of the case renders unnecessary any examination of the conveyance and release by the trustees, Williamson and Evans, under order of the Orphans' Court.    Such a conveyance was superfluous, for the estate of the first devisees was unaffected by the attempted restriction.

The next objection urged against the title is, that the petition under which the order of sale was obtained was defective, in that it made no reference to the restriction already noticed, and that it did not call into court the necessary parties.    The sale was under the Act of 1853, entitled "An act relating to the sale and conveyance of real estate," an act eminently useful in disentangling titles to land, and in rendering ownership of real estate valuable.    It ought to receive a reasonable construction, so as to carry out the legislative intent.    The declared object of the legislature was to make the titles which pass under it fees simple absolute, indefeasible by any person or persons having a present or expectant interest in the property sold, and discharged from all liens.    Moreover it is provided, that the title shall not be prejudiced by any error in the proceedings of the court.    Yet it is undoubtedly true, that no one having a present interest can be affected by a proceeding under it, unless made a party; nor, perhaps, are contingent remainders or executory devises cut off, unless the title be explained in the petition, and the purpose be expressed, to bar any entailment, and defeat contingent remainders or executory devises.    But in the present case, reference to the building restriction was entirely unnecessary, if for no other reason, certainly for this, that it had no legal efficiency, as has been shown. The only remaining inquiry, therefore, is whether all the necessary parties were brought in.    It would protract this opinion to an unreasonable length to recite the whole chain of title, from Deborah Morris down, and it would be useless.    We have examined it carefully, and we are of opinion that there was no omission. We are unable to discover that there is any interest in Charles M. Cooper, Joseph B. Cooper, Jr., Richard M. Wistar, or Elizabeth Wistar.

As, therefore, the Orphans' Court undoubtedly had jurisdiction of the subject-matter, and as all persons who had any present or expectant interest were before the court, and as the decree was conclusive upon them, it follows that the title offered to the defendant below was perfect.

The judgment is affirmed.