## PHILLIPS, EXECUTOR, ET AL. v. HELDT ET AL.

[No. 4,566.    Filed June 24, 1904.]

WILLS.—*Restraint on Alienation.*— *Trusts.*— *Perpetuities.*— Where a will creates a trust in real estate which is to continue for thirty years, directing the sale thereof at the end of that period, alienation thereof is forbidden by implication, in violation of §3382 Burns 1901 against restraints on alienation. *pp. 395, 396.*

SAME. — *Construction.*—*Provisions Containing Trusts in Restraint on Alienation.* —*Perpetuities.*—Where it appears from the provisions of a will that a bequest made in one item of the will was intended to take effect without reference to other provisions of the will creating a trust in violation of §3382 Burns 1901 against restraints on alienation, such bequest may be sustained, though the trust is invalid. *pp. 396, 397.*

SAME.—*Construction.*—*Bequest in Perpetuity for Private Burial Grounds.*—A provision in a will for the enclosure of the family graves and the expenditure of a certain amount annually for the care of the graves in perpetuity is invalid, and such provision is only effective during the administration of the estate. *pp. 397, 398.*

SAME.—*Charitable Bequests.*—*Perpetuities.*—Charitable bequests though not within the statute, §3382 Burns 1901, against restraints on alienation, are invalid, where such bequests are a part of a general scheme to create a trust for thirty years in violation of such statute. *pp. 398, 399.*

SAME. — *Construction.* — Where an executor applied to the court for the construction of the will of testatrix as to the disposition of a surplus arising from the sale of real estate, and in answer to the cross-complaint of an heir asked the court to construe each provision of the will, no error was committed in construing the entire will, all the parties in interest being before the court. *p. 399.*

From the Vanderburgh Circuit Court; A. C. *Hawkins,* Special Judge.

Proceeding by John T. Phillips, executor of the will of Elizabeth Aiken, deceased, and others, against Daniel A. Heldt and others for the construction of the will. From a judgment construing the will, petitioners appeal. *Affirmed in part and reversed in part.*

R. C. Wilkinson, Alexander Gilchrist, C. A. De Bruler, J. D. Welman, G. W. Buff and W. P. Stratton, for appellants.

*G. V. Menzies, J. W. Spencer, J. R. Brill* and *L. J. Herman*, for appellees.

COMSTOCK, J.—All the questions in this case arise upon the will of Elizabeth Aiken, deceased, which was admitted to probate in the Vanderburgh Circuit Court on the 9th day of December, 1899. The following is a copy of the will: "In the name of the benevolent Father of all, I, Elizabeth Aiken, of the city of Evansville, county of Vanderburgh, and State of Indiana, being of sound mind and memory, do hereby make and publish this my last will and testament, at the time revoking all former wills by me made.

"Item First. It is my will that all my just debts shall be first paid, as well as any and all debts made after my death.

"Item Second. It is my will that the Rev. J. T. Phillips (if alive) shall officiate at my funeral; and provided, that in the case of the death of the said Rev. Phillips prior to my death, then and in that case I request some other Christian minister to officiate, for which services I direct my executor, hereinafter named, to pay the sum of $25 and expenses.

"Item Third. I desire to be buried at the James Graveyard, on the right side of my son, David Aiken.

"Item Fourth. It is my will that my funeral expenses shall be reasonable, and left to the executor, hereinafter mentioned, as to the amount.

"Item Fifth. And in case I do not erect around the graves of the place of my interment and that of my husband and son a suitable iron fence, I will and direct that my executor, hereinafter mentioned, shall do so within sixty days from my decease, and that the graves of my husband, son and myself may be properly kept in good repair by my executor, and I direct that $10 annually be set aside for this purpose; and provided that in case any part of said $10 shall remain after making said repairs I direct that

the same shall go to the trustees of the said cemetery for the general repairs of the said cemetery.

"Item Sixth. I do hereby nominate and appoint the Rev. John T. Phillips, of Graysville, Sullivan county, Indiana, my executor of this my last will and testament, and also as trustee, to take absolute care and control of all my farms, personal property, and each and everything of which I may die seized of, and I direct that my executor shall well and truly pay all debts owing by myself or my said estate, that he, the said Rev. John T. Phillips, may be appointed trustee to take care of and control and conduct all of my real estate and to pay all taxes, collect all rents, make all repairs, and to rent all lands—in other words, to have absolute control of each and everything of whatsoever kind of real estate and personal property I may die owning, and that the said John T. Phillips shall, as such trustee, make report to the Vanderburgh Circuit Court on or about the 1st day of January of each and every year during his trusteeship; and I direct that said trusteeship shall continue for thirty years from my death, and in case of the death or the resignation of Mr. Phillips, I ask the Vanderburgh Circuit Court to appoint his successor, and I direct that said appointment shall in no way be related by blood or marriage to myself.

"Item Seventh. It is my will in case of flood—that overflows the farm—then in that case I direct that the proceeds of the bottom farm for one season be retained by my executor to make any needed repairs.

"Item Eighth. It is my will and I direct that my executor keep in his hands the sum of $1,000, out of which to make any needed repairs, and that he pay no interest on same.

"Item Ninth. I give, devise, and bequeath to the Rev. John T. Phillips the sum of $300, so long as he shall be the pastor of the Union Christian Church of Knight town-

ship, Vanderburgh county, Indiana, and also during his natural life, commencing at my demise.

"Item Tenth. It is my will and I direct that at the death of said Rev. John T. Phillips, commencing at his said death and from that time and continuously for thirty years from my death, I direct that my said executor shall pay to the trustees of the Union Christian Church of Knight township, Vanderburgh county, Indiana, the sum of $300, for the purpose of paying a Christian minister for said church at least once a month or oftener; and provided, that in case at any time the trustees of said church shall at any time fail to employ a minister of said church for six months, then and in that case I will and direct that said $300 annually shall be paid to the trustees of the Union Christian College, of Merom, Sullivan county, Indiana, and said claim shall be a preferred one.

"Item Eleventh. I give and devise and bequeath to the Union Christian College, of Merom, Sullivan county, Indiana, annually the sum of $200 for thirty years from my death.

"Item Twelfth. I give, devise, and bequeath to my niece, Emma Koehl, of Evansville, Indiana, the rents and profits off of thirty acres of land, to be surveyed off of and by the executor of this my last will and testament, during her life. Said survey to commence at the sycamore tree at the southwest corner of the farm; thence running north to the west line of the farm to the south line of the lands belonging to the heirs of John B. Garrett's estate; thence east from said line a sufficient number of rods wide to enclose thirty acres; thence running to the river bank. In case the said Emma Koehl shall die leaving children, then and in that case said children shall take absolutely, and in case said Emma shall die without issue, said bequest to revert to her nearest kin.

"Item Thirteenth. I will to John Koehl, my nephew, the proceeds and rents off of thirty acres of land, to be surveyed by my executor, on the following lands, to wit: Commencing at the southeast line of Emma Koehl's survey; thence running north to the northeast corner of said Emma Koehl's survey; thence east a sufficient number of rods wide to enclose thirty acres; thence to the river bank, and at his death the same to go to his sister, Ella Koehl.

"Item Fourteenth. It is my will and I direct that my said executor shall pay to Miss Ella Koehl the sum of $300 annually until she shall arrive at the age of twenty-one years.

"Item Fifteenth. It is my will and I direct that my said executor shall pay to Mrs. Eliza Koehl the sum of $100 annually (payable quarterly) so long as she remains a widow.

"Item Sixteenth. It is my will and I direct my executor to pay to Louis Stacer during his lifetime the sum of $100 annually (payable quarterly); and provided that in case his wife shall live longer than he does, then and in that case I direct my said executor to pay to his said widow during her said widowhood the sum of $100 annually, and payable quarterly.

"Item Seventeenth. It is my will that all of my lands, of some seven hundred and sixty-eight acres, more or less, not provided for heretofore in this will, shall be rented by my executor or trustee. After all claims, gifts, donations, bequests, and including the $1,000 reserved by executor or trustee, expenses, taxes, claims of the trustee or executor for services, and all debts are paid, then the remaining proceeds for rents of farm shall be divided as follows, to wit: that is to say, one-half of the net amount aforesaid shall be equally divided between the following mentioned persons: Mrs. Elizabeth Pallock, Mrs. Mary E. James, Mrs. George Venneman, Theodore Venneman, Mrs. Ella

Ritchie, of the city of Indianapolis, Miss Dena Venneman, Miss Julia Venneman, Miss Mary Venneman, and Mrs. James P. Carter, during their natural lives, and at the death of any one, to the nearest kin of decedent.

"Item Eighteenth. It is my will that the remaining half shall go equally to each of the following mentioned persons: William C. Stacer, of Mt. Erie, Wayne county, Illinois; Nancy Stacer, wife of John Stacer, of Red Bluff, California; her heirs by Henry and John Stacer one share; David Stacer's heirs one share; and the heirs of my sister, Margaret Helt, one share during their natural life, and at their death to the nearest of kin to the decedent.

"Item Nineteenth. It is my will and I devise and bequeath to Morea E. Angel, daughter of Joseph Angel by present wife, the sum of $50 annually for fifteen years, and this bequest shall be prior to the payment of rents to heirs, as recited in items seventeenth and eighteenth.

"Item Twentieth. It is my will that all personal property, stock, grain, household goods, except wearing apparel and wardrobe, shall be sold at public auction by my executor, and the proceeds applied to the payment of debts; also, the collection of life insurance and all matters of business not heretofore mentioned shall be attended to by my executor, and settling claims against the estate.

"Item Twenty-first. It is my will that in case creditors holding mortgages shall attempt to foreclose their mortgages that my said executor be authorized to effect a loan on my said real estate to pay off said mortgages.

"Item Twenty-second. It is my will and I direct that at the end of thirty years all of my real estate be sold that has not finally been herein disposed of in this will, and that the same be sold at public sale by my said executor or trustee to the highest and best bidder, and that the proceeds thereof be applied as follows, to wit: First, the sum of $1,000 shall be paid to the Union Christian Col-

lege, of Merom, Sullivan county, Indiana, and the rest and remainder to be equally divided among the heirs heretofore recited or their heirs or blood kin."

After Phillips, as executor, had taken out letters testamentary upon this estate, by an order of the Vanderburgh Circuit Court, which is hereafter pointed out, he was authorized and directed to rent the real estate of the decedent. There was an assent on the part of all the parties interested that he should rent this real estate for the years 1900 and 1901, on the understanding that such action on his part should in no way affect their rights to contest the will of Mrs. Aiken, or to contest any part of it. In pursuance of this order and understanding the real estate was rented for those years, and was accounted for by Mr. Phillips in his final report. In the course of the administration of the estate it became necessary to sell a portion of the real estate for the payment of the debts of the decedent, and there was such a sale. As the result of the sale, and after paying off the debts and expenses of administration, there remained a surplus in the executor's hands of $3,122.-34. The net income for the renting of the real estate for the two years was $3,497.93, so that the whole of the surplus to be disposed of comes from the rents of the lands for the two years in question. The renting of the land included thirty acres, the rents and profits of which were devised by the twelfth item of the will to Emma Koehl, who is now the appellee Emma Inkelbrandt, and the above net sum of $3,497.93 includes the rents for those thirty acres.

The question before this court, as before the court below, is, what disposition should be made of the funds in the hands of the executor as shown by his final report, the same being the excess from the sale of part of the realty. The question as stated arose upon the cross-complaint of the appellees, the demurrer thereto, and answer of executor Phillips to appellees' cross-complaint. In the cross-com-

plaint of appellees and answer of the executor the court was asked to construe the will. The court held that each item of the will except the first four was void, and directed in its judgment that the surplus should be distributed among the heirs of the testatrix.

Appellants claim that the court erred in holding that each item of the will, from the fifth to the twenty-second, inculsive, was null and void. It is admitted that items thirteen and fourteen lapsed on account of the death of the devisees therein named prior to the death of Elizabeth Aiken.

The court below held items one, two, three and four to be valid and they are not contested here. As to all the other items of the will, the claim of the appellee is that they are void, first, because the disposition of the income of the trust property in items seventeen and eighteen, and of the proceeds of the final sale under item twenty-two, are so vague and uncertain that they can not be carried out; second, that the effect of the creation of the trust to continue for thirty years is a suspension of alienation for that period, and is invalid because it contravenes the statute of this State against restraints on alienation, and the rule against perpetuities. §§3382, 8133 Burns 1901; *Fowler* v. *Duhme,* 143 Ind. 248.

The suspension of the power of alienation in said will is not made to depend upon a life or any number of lives in being, but is fixed for a term of years. The suspension for a term of years, however short, is void. "The absolute power of alienating lands shall not be suspended by any limitation or condition whatever, contained in any grant, conveyance or devise, for longer period than during the existence of a life or any number of lives in being at the creation of the estate conveyed, granted, devised and therein specified, with the exception that a contingent remainder in fee may be created on a prior remainder in fee, to take effect in the event that the person or persons

to whom the first remainder is limited shall die under the age of twenty-one years, or upon any other contingency by which the estate of such person or persons may be determined before they attain their full age." §3382, *supra;* *Farrand* v. *Petit,* 84 Mich. 671, 48 N. W. 156; *Trowbridge* v. *Metcalf,* 5 Hun, App. Div., 318, 39 N. Y. Supp. 241; *Fargo* v. *Squires,* 6 Hun, App. Div., 485, 39 N. Y. Supp. 648; *Steinway* v. *Steinway,* 10 Misc. (N. Y.) 563, 32 N. Y. Supp. 183. In the will before us there is no express prohibition of alienation for any period, but that such alienation is forbidden is necessarily implied by the creation of a trust in the sixth item of the will, which is to continue for thirty years, and the direction for the sale at the end of thirty years by item twenty-two.

The parties to this controversy concede that the decedent attempted to create a trust. It is claimed, however, by the appellant Emma Inkelbrandt (Emma Koehl in the will) that item twelve creates an estate for her life in thirty acres of land which are particularly described; that this devise is separate, free, and independent of any trust in the will. A separate devise of a life estate in land is valid. *Thompson* v. *Schenck,* 16 Ind. 194; *Stout* v. *Dunning,* 72 Ind. 343; *Hunt* v. *Williams,* 126 Ind. 493; *Commons* v. *Commons,* 115 Ind. 162. The fact that item seventeen provides for the renting of land "not provided for hereinbefore in this will" lends support to the claim that the thirty acres are not included in the trust. Item sixteen excludes from the trust lands already provided for, and item twenty-two provides for the sale at the end of thirty years of all the testatrix's real estate "not finally hereinbefore disposed of." It appears, too, that in items seventeen and eighteen the name of the devisee in item twelve does not appear. The bequest in this item is intended, as we interpret the will, to take effect without reference to other provisions, and independent of the trust attempted

to be created, and no violence is done to the intention of the testatrix in holding it valid. *Oxley* v. *Lane,* 35 N. Y. 340, *Hawley* v. *James,* 16 Wend. 60; *Harrison* v. *Harrison,* 36 N. Y. 543.

Item five provides for the erection of an iron fence around the grave of the testatrix, her husband, and her son, and the expenditure of $10 annually by the executor in the care of the graves named therein. The English decisions admit the validity of bequests in perpetuity for public cemeteries, but deny the validity of such gift for private burying grounds or for private monuments or to provide a tomb for the testator or to keep his monument or tomb in good condition, where the trust is to endure for a longer period than is permitted by the rule of perpetuities. In Underhill, Wills, §823, the author says: "In the United States the decisions seem to favor the validity of perpetual trusts for the purchase or the maintenance and repair of private monuments and burial plots, and for the erection of private monuments. Such trusts have been frequently sustained."

In Perry, Trusts (4th ed.), §706, it is said: "It has been held, quite decidedly, that a trust to build a monument, tomb, or vault for the donor is not a charitable use; in other cases, it has been held doubtful whether such trusts are charitable; but it is now settled that a trust to build, maintain, and keep in repair tombs, vaults, and burying grounds of the donors, their families or parishes, are so far charitable that they will be carried into effect. A bequest of an annual sum for repairs upon a monument has been held good. Such bequests will always be enforced as against the heir." The author last named cites *Lloyd* v. *Lloyd,* 10 Eng. L. & Eq. 139, 2 Sim. N. S. 255; *Swasey* v. *American Bible Soc.,* 57 Me. 523; *Willis* v. *Brown,* 2 Jur. 987; *Gravenor* v. *Hallum,* Amb. 643; *Dexter* v. *Gardner,* 7 Allen 243. In *Bell* v. *Briggs,* 63 N. H. 592,

4 Atl. 702, it is held that under the general law administrators are authorized to keep a monument in proper condition during the time of administration.

It is conceded by appellee Heldt that the provision for the erection of an iron fence is feasible, and, detached from the direction which follows, could lawfully be effectuated—that is, the maintenance of the graves—and the surplus set aside for that purpose; but that, taken as a whole, it is a part of the general scheme which runs through and controls the entire instrument, to create a trust for thirty years. In this view we do not concur. We believe that it appears to have been the intention of the testatrix by this item, independently of any other, to provide for the care of the cemetery lot and cemetery described. While the cases in various jurisdictions are in conflict, the views of the eminent authors which we have quoted would, in the opinion of the writer, justify the holding of said item valid in perpetuity. But it is the opinion of the majority of the court that its provisions are only effective during the administration of the estate, and that thereafter said annual expenditure of $10 should cease.

The remaining items of the will constitute a general scheme to create a trust for thirty years, and are therefore invalid under the statute. The bequests to Union Christian College (item eleven) and to Union Christian Church (item 10) are charitable bequests. As was said by Elliott, J., in *City of Richmond* v. *Davis*, 103 Ind. 449: "There is, and has ever been, a difference between ordinary devises and devises made to a charity. The difference is not an artificial one, but inherent and fundamental. A devise for a charitable purpose is in its nature perpetual and inalienable." Charitable bequests do not come within the statute (§3382 Burns 1901), but being a part of the general scheme must be held invalid, for they would defeat the testatrix's purpose for the disposal of her property.

*Tilden* v. *Green,* 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. 487; *Manice* v. *Manice,* 43 N. Y. 303; *Van Schuyver* v. *Mulford,* 59 N. Y. 426; *Knox* v. *Jones,* 47 N. Y. 389; *Benedict* v. *Webb,* 98 N. Y. 460; *Kennedy* v. *Hoy,* 105 N. Y. 134, 11 N. E. 390; *Lockridge* v. *Mace,* 109 Mo. 162, 18 S. W. 1145; Page, Wills, §630; *Clemens* v. *Clemens,* 60 Barb. 366; *Richards* v. *Moore,* 5 Redf. 278.

Appellant Union Christian College makes the point that the court below had no right to construe the will on the petition of Daniel Heldt, heir at law. The executor under the will, by answer to the cross-complaint of appellee Heldt, asked the court to construe each provision of the will and direct to whom the money on hand should be paid. All the parties in interest were before the court. The court rightly exercised its power. *Hughes* v. *Hughes,* 30 Ind. App. 591, and cases cited.

The judgment is affirmed in part, and in part reversed as indicated. The court is directed to render judgment in accordance with this opinion.

Black, C. J., Roby, P. J., Henley, Robinson, and Wiley, JJ., concur.