### LONG et al. v. UNION TRUST CO. et al.

(District Court, D. Indiana. May 4, 1921.)

No. 401.

1. **Courts ⚙═359—In construing will, federal court must put itself in attitude of state courts as to public charities.**

   The United States District Court, in construing a will which attempts to create a public charity, must put itself in the attitude of the courts of that state, which strongly favor public trusts for charitable uses, and liberally construe deeds and wills in which the maker evinces a charitable purpose, so as never to defeat a manifest charitable intent, unless clearly contrary to statute.

2. **Charities ⚙═21(4)—Gift for founding college for women held sufficiently certain.**

   A direction in a will that the residuary estate be devoted to founding and maintaining a school or college for the higher education of women

and girls, which shall be nonsectarian, but Christian, and directing the selection of trustees by the elders of a church, by the Governor of the state, and by the mayor of the city, sufficiently designates the purpose to create a public charity.

3. **Charities ☞47—Chancellors can appoint trustees, when donees of power refuse.**

   If the persons designated by a will to appoint the trustees for a college to be founded and maintained under the will should refuse to act, the state chancellors, under the judicial cy pres power, could select a board of the kind intended by testator.

4. **Charities ☞21(4)—Class of beneficiaries of college held identified.**

   In a gift to be used in founding and maintaining a college for the higher education of women, though the beneficiaries are indefinite, which is the essential characteristic in distinguishing a public trust from a private one, they are so positively identified by class that any arbitrary selection of pupils by the board of trustees could be restrained in a suit by the Attorney General in the interest of the people.

5. **Perpetuities ☞4(15)—Devise to trustees, to be conveyed to college founded later, held not illegal restraint of alienation.**

   Where a testator gave his property to trustees for his wife during her widowhood, and thereafter to be used in founding and maintaining a college under the control of 10 trustees to be appointed after the termination of the wife's interest, the legal title vested in the testamentary trustee at once, subject to the private trust during widowhood, and thereafter to the public trust, so that the gift does not violate Burns' Ann. St. Ind. 1914, §§ 3998, 9723, providing that the absolute power of alienation shall not be suspended longer than during lives in being at the creation of the estate.

In Equity. Suit by Amelia S. Long and others against the Union Trust Company, trustee, and others. Decree rendered dismissing the bill for want of equity.

Robbins, Townley & Wild, of Chicago, Ill., and Matson, Kane & Ross, of Indianapolis, Ind., for plaintiffs.

Miller, Dailey & Thompson, of Indianapolis, Ind., for defendants.

BAKER, Circuit Judge. If the attempt of an Indiana citizen and resident, one Henry Long, now deceased, to create by his will a charitable public trust of his property in Indiana, was ineffectual, complainants, citizens of Illinois, are entitled by the Indiana law of descent to his residuary estate, which is now in the hands of defendants.

Long devised his residuary estate to the Union Trust Company of Indianapolis as trustee in fee simple; directed the Trust Company to pay the entire net income to his widow, if she should elect to take that provision in lieu of her legal interest in his estate, but only so long as she should remain his widow; directed the Trust Company, if she should elect to take under the law, to have her part set off to her, and thereupon to convey in fee simple what was left to ten trustees to be selected as hereinafter stated; directed that his residuary estate be devoted to "founding and maintaining a school or college for the higher education of women and girls" which "shall not be sectarian either in its teaching or example, but a broad, liberal spirit of Christianity, such as shall not be repugnant to the feelings and convictions of any intelligent Christian person, shall prevail throughout said school or college

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

both in its inception and continuance"; directed that, when his wife should cease to be his widow in receipt of the income provided for her in his will, ten trustees should be selected, six by the then elders of the First Presbyterian Church of Indianapolis, two by the then Governor of Indiana, and two by the then mayor of Indianapolis, to found, maintain, and manage the college "under the aforesaid general and controlling principles and directions"; directed that thereupon the Trust Company, trustee, or its successor, should convey to the board of college trustees for the aforesaid educational purposes the legal title to the residuary estate in fee simple; and directed that, whenever it should be practicable under the laws of Indiana to carry on the college as a body corporate of which the governing body should be a board of ten trustees selected as provided in his will, then the board of college trustees should procure a charter and convey to the corporation in fee simple the residuary estate, "with all accumulations from accretions and profits arising therefrom or from donations by others." Finally Long appointed the Union Trust Company sole executor and also "trustee of all the trusts hereby created except the trust of founding, maintaining and managing the college for the higher education of women."

[1] Counsel have shown wide research and great learning in their briefs and have ably discussed a wide range of questions.[1]  But this

---

[1] Complainants cited: Wheeler v. Smith, 9 How. 55, 13 L. Ed. 44; Chamberlain v. Stearns, 111 Mass. 268; Attorney General v. Soule, 28 Mich. 153; Re Sutro's Estate, 155 Cal. 727, 102 Pac. 920; Morice v. Bishop of Durham, 9 Ves. 399, 32 Eng. Rep. 656, affirmed 10 Ves. 522, 32 Eng. Rep. 947; James v. Allen, 3 Meriv. 17; Macduff v. Macduff, [1896] 2 Ch. 451; Kendall v. Granger, 5 Beav. 300; Perry on Trusts, § 711; Fowler v. Duhme, 143 Ind. 248, 42 N. E. 623; Huxford v. Milligan, 50 Ind. 542; Herron v. Stanton (Ind. App.) 128 N. E. 363; Phillips v. Heldt, 33 Ind. App. 388, 71 N. E. 520; Rose v. Rose, 4 Abb. Dec. (N. Y.) 108; Yates v. Yates, 9 Barb. (N. Y.) 324; Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 938; In re Wilcox, 194 N. Y. 288, 87 N. E. 497; Hawley v. James, 5 Paige, Ch. (N. Y.) 318, 444, 445 (1835); Hawley v. James, 16 Wend. (N. Y.) 61 (1836); Belmont v. O'Brien, 12 N. Y. 394; Hobson v. Hale, 95 N. Y. 588; Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 938; Allen v. Allen, 149 N. Y. 280, 43 N. E. 626; Brewer v. Brewer, 11 Hun, 147 affirmed in 72 N. Y. 603; Ward v. Ward, 105 N. Y. 68, 11 N. E. 373; Hopkins v. Grimshaw, 165 U. S. 342, 17 Sup. Ct. 401, 41 L. Ed. 739; Girard Trust Co. v. Russell, 179 Fed. 446, 102 C. C. A. 592; Jocelyn v. Nott, 44 Conn. 55; Merritt v. Bucknam, 77 Me. 253; Brooks v. Belfast, 90 Me. 318, 38 Atl. 222; Merrill v. Missionary Union, 73 N. H. 414, 62 Atl. 647, 3 L. R. A. (N. S.) 1143, 111 Am. St. Rep. 632, 6 Ann. Cas. 646; Leonard v. Burr, 18 N. Y. 96; Zeisweiss v. James, 63 Pa. 465, 3 Am. Rep. 558; Smith v. Townsend, 32 Pa. 434; Penrose's Estate, 257 Pa. 231, 101 Atl. 319; Village v. Mead, 43 Vt. 556; Gray on Perpetuities, § 589; Marsden on Perpetuities, 309; Company of Pewterers v. Christ's Hospital, 1 Vernon, 162, 23 Eng. Rep. 388 (1683); A. G. v. Gill, 2 P. Wms. 369 (1726); Johnson Trusts, L. R. 2 Eq. 716; In re Bowen, [1893] 2 Ch. 491 (dictum); Worthing v. Heather, [1906] 2 Ch. 532; Com'r v. De Clifford, 1 Dr. & W. 245, per Sugden, L. C.; In re Stratheden, [1894] 3 Ch. 265; Kingham v. Kingham, [1897] I. R. 170; State v. Holmes, 115 Mich. 456, 73 N. W. 548; Dodge v. Pond, 23 N. Y. 69; Bascom v. Albertson, 34 N. Y. 584; Burrill v. Boardman, 43 N. Y. 254, 3 Am. Rep. 694; Booth v. Baptist Church, 126 N. Y. 215, 28 N. E. 238; St. John v. Andrews, 191 N. Y. 254, 83 N. E. 981, 14 Ann. Cas. 708; In re Woods' Estate, 55 Hun, 204, 7 N. Y. Supp. 836, affirmed 23 N. E. 1151; Townshend v. Frommer, 125

court must put itself in the attitude of the Indiana courts, which strongly favor public trusts for charitable uses, liberally construe deeds and wills in which the maker evinces a charitable purpose, never. defeat the maker's manifested charitable intent unless he clearly runs afoul of the statute, and freely apply the judicial cy pres power in administering a public trust that vested on the execution of the deed or at the testator's death or thereafter within lives then in being.

Really there are no discernible differences between opposing counsel respecting propositions of law. This case would not be here if they could have agreed as well upon the construction to be put upon Long's testament.

Only two of complainants' contentions require answer: First, that the intended gift to charity was so uncertain and ill-defined as to be incapable of judicial enforcement under the laws of Indiana; and,

N. Y. 446, 26 N. E. 805; Henson v. Wright, 88 Tenn. 501, 12 S. W. 1035; McFall v. Kirkpatrick, 236 Ill. 281, 86 N. E. 139; Shaw v. Paine, 94 Mass. (12 Allen) 293; 31 Cyc. 1042; 22 Am. & Eng. Enc. of Law (2d Ed.) 1092, 1137, 1138; Farwell on Powers (3d Ed.) 9; Dickinson v. Teasdale, 1 De G., J. & S. 52–60; Underhill on Trusts, 376, 380, 396; Fearne on Remainders, 9; Stevens v. Evans, 30 Ind. 39; Hadley v. Hadley, 147 Ind. 427, 46 N. E. 823; Kintner v. Jones, 122 Ind. 148, 23 N. E. 701; Fontain v. Ravenel, 17 How. 369, 15 L. Ed. 80; 1 Story, Eq. Juris. § 169; 2 Sugden on Powers, 172; Bull v. Vardy, 1 Ves. Jr. 270, 30 Eng. Rep. 330; Coxe v. Basset, 3 Ves. Jr. 155, 30 Eng. Rep. 945; Tincher v. Arnold, 147 Fed. 665, 77 C. C. A. 649, 7 L. R. A. (N. S.) 471, 8 Ann. Cas. 917; Brigham v. Hospital (C. C.) 126 Fed. 796; Richards v. Wilson, 185 Ind. 335, 112 N. E. 780; Dykeman v. Jenkines, 179 Ind. 549, 101 N. E. 1013, Ann. Cas. 1915D, 1011; Russell v. Allen, 107 U. S. 171, 2 Sup. Ct. 327, 27 L. Ed. 397; Fairfield v. Lawson, 50 Conn. 501, 47 Am. Rep. 669; Grimes v. Harmon, 35 Ind. 198, 9 Am. Rep. 690; Erskine v. Whitehead, 84 Ind. 357; Baptist Ass'n v. Hart, 4 Wheat. 1, 4 L. Ed. 499; Baptist Ass'n v. Smith, 3 Pet. 497, 7 L. Ed. 749; Vidal v. Girard, 2 How. 127, 11 L. Ed. 205; Moggridge v. Thackwell, 7 Ves. 35.

Defendants cited: Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401; Loring v. Marsh, 6 Wall. 337, 18 L. Ed. 802; De Vaughn v. Hutchinson, 165 U. S. 566, 17 Sup. Ct. 461, 41 L. Ed. 827; United States v. Oregon, etc., Co. (C. C.) 186 Fed. 861, 908; West Virginia Pulp & Paper Co. v. Miller, 176 Fed. 284, 100 C. C. A. 176; Handley v. Palmer (C. C.) 91 Fed. 948; Duggan v. Slocum (C. C.) 83 Fed. 244; Wood v. Paine (C. C.) 66 Fed. 807; Richards v. Wilson, 185 Ind. 335, 112 N. E. 780; Board v. Dinwiddie, 139 Ind. 128, 37 N. E. 795; Grand Prairie Seminary v. Morgan, 171 Ill. 444, 49 N. E. 516; Eaton v. Woman's Home Missionary Society, 264 Ill. 88, 105 N. E. 746; Wilson v. First Nat. Bank, 164 Iowa, 402, 145 N. W. 948, Ann. Cas. 1916D, 481; Ely v. Attorney General, 202 Mass. 545, 89 N. E. 166; Allen v. Trustees of Nasson Institute, 107 Me. 120, 77 Atl. 638; In re MacDowell's Will, 217 N. Y. 454, 112 N. E. 177, L. R. A. 1916E, 1246, Ann. Cas. 1917E, 853; Norris v. Loomis (Mass.) 102 N. E. 419; Grimke v. Attorney General, 206 Mass. 49, 91 N. E. 899; Ackerman v. Fichter, 179 Ind. 392, 101 N. E. 493, 46 L. R. A. (N. S.) 221, Ann. Cas. 1915D, 1117; Board v. Rogers, 55 Ind. 297; Ex Parte Lindley, 32 Ind. 367; DeBruler v. Ferguson, 54 Ind. 549; Craig v. Secrist, 54 Ind. 419; Sweeney v. Sampson, 5 Ind. 465; Haines v. Allen, 78 Ind. 100, 41 Am. Rep. 555; Common Council of City of Richmond v. State, 5 Ind. 334; McCord v. Ochiltree, 8 Blackf. (Ind.) 15; City of Richmond v. Davis, 103 Ind. 449, 3 N. E. 130; Phillips v. Heldt, 33 Ind. App. 388, 71 N. E. 520; Santa Clara Female Academy v. Sullivan, 116 Ill. 375, 6 N. E. 183, 56 Am. Rep. 776; Franklin v. Hastings, 253 Ill. 46, 97 N. E. 265, Ann. Cas. 1913A, 135; Mills v. Davidson, 54 N. J. Eq. 659, 35 Atl. 1072, 35 L. R. A. 113, 55 Am. St. Rep. 94.

second, that the intended gift to charity, if otherwise good, created an estate in violation of the Indiana statute (Burns' R. S. Ind. §§ 3998, 9723) providing that the absolute power of alienation shall not be suspended longer than during lives in being at the creation of the estate.

[2-4] I. From the will (hereinabove fully abstracted) I have no difficulty in finding that Long intended to found and maintain in Indiana an institution for the higher education of women. This location is shown by reference to the Indiana body corporate and by the method of selecting the governing board. Assuming that Long had common information on the subject, he intended an institution similar to Wellesley, Smith, Vassar and other colleges for the higher education of women. He intended that the governing board should be composed of persons of the character and the disposition to serve the public of the persons customarily chosen by church officials for denominational schools, by Governors for state institutions of advanced education, and by mayors for public schools. (And if the Indianapolis elders, the Indiana Governor, and the Indianapolis mayor, as donees of a naked power, should refuse to name a board of trustees, Indiana chancellors under the judicial cy pres power should be deemed fully as competent to select a board of the kind intended by Long, assuming of course that the gift is sufficiently definite and that the equitable interest of the public vested within the required time.) He intended that the governing board should conduct a nonsectarian, but Christian, college for the higher education of women as similar colleges in existence were customarily conducted. He intended that the trustees should serve without profit to themselves (other than the allowances customarily paid at similar institutions), for he directed them to turn over the entire residuary estate and all its increase and all donations by others to the corporate college when Indiana law should authorize a corporation of the kind described in his will. He intended that the pupils, though they should pay tuition fees as is customary, should receive more than they paid for, and that through their higher education the public generally should be benefited by his gift. He intended that the pupils should be women who had received preparatory education, who from the location of the institution and from the advantages it should offer in comparison with other institutions should be led to apply for admission, who should pass the customary entrance examinations, and who should qualify in character according to the general policy declared in his will. In short, the charitable intent is clear; the plan for the use, considered in the light of common knowledge, is quite certain; and though the beneficiaries are indefinite (which is the essential characteristic in distinguishing a public trust from a private one), they are so positively identified by class that any arbitrary or whimsical selection of pupils by the board of trustees could be restrained in a suit by the Attorney General in the interest of the people.

[5] II. To the Trust Company Long devised the fee simple. This legal title vested at the moment of Long's death. It came to the Trust Company charged with a private trust in favor of the widow. Was the

legal title at Long's death also charged with the public trust that Long unquestionably intended to create?

Long expressly excluded the Trust Company from acting in founding, maintaining and managing the college, and directed it to convey, after the widow's equitable interest had terminated, the fee simple to the board of trustees who should thereupon proceed to erect the buildings, set up the faculty, and open the college. But these facts are not conclusive upon the question whether at Long's death an equitable interest of the public vested, for which the Trust Company should hold the legal title as trustee. As the Trust Company held the legal title not for its own use, it must have held it for the benefit of others. Complainants, heirs at law of the widow, now deceased, but not heirs at law of the testator, had been provided for in other parts of the will. Surely the will affords no basis for finding that Long intended that the Trust Company should hold the legal title for their benefit. He certainly intended to exclude himself from any beneficial interest in the Trust Company's legal title. If he had died intestate, his widow would have been his only heir at law. He died testate and his will negatives any intent that his widow or her heirs at law should ever become possessed of the fee. Must his well-expressed intention to devote his residuary estate to a public use be defeated because his will failed to name trustees to start and carry on the college and failed to provide any mode for their selection until after his widow should cease to draw the income? That income was a charge upon the Trust Company's legal title. It is true that the will appointed the same Trust Company to act as trustee in administering that private trust. But if no trustee to administer her private trust had been appointed in the will, a court of equity would appoint a trustee to protect her equitable interest in the legal estate. Should a court of equity be less diligent in providing a trustee for a public trust when the testator's intent to pass at his death the equitable fee in his property to a public trust is as clear as his intent to set up at his death a private trust in the income? If the holder of the legal title should commit waste, a court of equity would listen to the attorney of the individual that is beneficiary of the private trust in the income. Ought it not also to listen to the Attorney General of the public that is beneficiary of the public trust in the body of the property, even though the enjoyment of the benefits is postponed until the end of lives in being? From a study of Long's will I summarize the following interpretation as determinative of complainants' second point: Long devised the fee simple to the Trust Company subject to two charges thereon, one in favor of his widow, the other in favor of the public; the whole legal title vested in the Trust Company at Long's death subject to these two charges; the widow's equitable interest vested at Long's death; from the nature of her interest the right to enjoy the benefits thereof was immediate and might continue (as it did in fact) until her death; the public's equitable interest vested at Long's death; but on account of the widow's prior right to the income the public's right to enjoy the benefits of the gift of the body of the property was suspended during the widow's life; the direction to the Trust Company to convey, after the termination of

the widow's interest in the income, the body of the estate to the public (by means of trustees) was a direction to the holder of the legal title in trust to surrender it to the equitable owner that had been such owner from the moment of the testator's death; and the selection of a governing board, the formation of a corporation, etc., were the means for administering the gift, which might be controlled by a court of equity and supplemented, if necessary, by the use of the judicial cy pres power.

It might do to stop at this point; but complainants so earnestly stress certain authorities that it may be proper to notice them and to point out their inapplicability to the present case.

One line of cases may be illustrated thus: A. devises his estate in fee to B. and his heirs, but on condition that if B. or his heirs convey to outsiders then the estate in fee shall vest in a public charity. In such cases the testator never had any charitable intent. Quite the contrary. He intended that B. and his heirs should never alienate the estate and he held the remote gift over them as a threat. A clear instance of an attempted defiance of the law.

Another group is of this kind: A. devises his estate in fee to B. and his heirs, but on condition that if Canada be annexed to the United States then the estate in fee shall vest in a public charity. Here it may be said that the testator had a charitable intent (to benefit the enlarged public created by the union), but he based his intent on a contingency that might not happen within lives in being. So the gift was remote and the condition precedent to the vesting of any interest, legal or equitable, in the public was an attempt to suspend the power of alienation beyond the permitted period. The inapplicability of these two lines of cases to the present document needs no elaboration.

Great reliance is placed on Grimes v. Harmon, 35 Ind. 198, 9 Am. Rep. 690. As that is an Indiana decision, and the case in hand must be ruled by Indiana law, it is important to value its relation to current Indiana law. Grimes devised his residuary estate "to the orthodox Protestant clergymen of Delphi, Indiana, and their successors, to be expended in the education of colored children, both male and female, in such way and manner as they may deem best, of which a majority of them shall determine; my object being to promote the moral and religious well being of the colored race." The gift was declared to be void on two grounds: First, because the court was incompetent to decide questions of orthodoxy in religion. From the prolonged discussion of the authorities on this point of orthodoxy, it is easy to infer that if the devise had been "to the Protestant clergymen of Delphi and their successors" the court would have had no trouble in identifying trustees competent to take title, either legal or equitable, for the charity. Second, because, even if competent trustees had been appointed by the will, the intended gift to charity was so uncertain and ill-defined as to be incapable of judicial enforcement. This second ground was criticized and virtually overruled in Erskine v. Whitehead, 84 Ind. 357. See, also, Board v. Dinwiddie, 139 Ind. 128, 37 N. E. 795; Dykeman v. Jenkines, 179 Ind. 549, 101 N. E. 1013, Ann. Cas. 1915D, 1011. No aid is furnished by the Grimes Case in construing the will of Long.

Current Indiana Law is represented by the later cases, above cited, and by Richards v. Wilson, 185 Ind. 335, 112 N. E. 780.

Bascom v. Albertson, 34 N. Y. 584, and Girard Trust Co. v. Russell (3d C. C. A.) 179 Fed. 445, 102 C. C. A. 592, from other jurisdictions, are not influential as against the Indiana decisions on this local question.

Defendants' motion to dismiss the bill for want of equity apparent on its face is sustained.